## Brown *against* M'Kinney.

The occupation of town lots up to a line-fence between them for more than twenty-one years gives to each party an incontestible right, and this whether either party knew of the adverse claim of the other or not; and whether either party has more or less ground than was in the lot he owns, originally. The right is settled after a possession of twenty-one years, without regard to where the original line once was.

ERROR to the common pleas of *Dauphin* county.

This was an action of ejectment by Horatio Brown and James Pople against Henry M'Kinney and others for the one fortieth part of an acre of land being part of a lot in the town of Harrisburg. The facts of the case are sufficiently stated in the opinion of the court.

*Rhawn*, for plaintiff in errror.
*Johnston* and *Ayres*, for defendant in error.

The opinion of the court was delivered by

HUSTON J.—The plaintiffs in error were plaintiffs below, and brought this ejectment as is stated in the writ for the fortieth part of an acre more or less being part of lot No. 295 in Harrisburg bounded &c., &c. The plaintiffs deduced title to lot No. 295. On the west it was bounded by lot No. 294. On this lot and on the side next to 295 stood a house built more than thirty years ago.—There was no objection to the plaintiff beginning at this house and measuring his distance along the street. The front of each lot on the street was fifty-two feet six inches, this they had, but insisted on more on the following grounds: They alleged and proved by James Pople that by going to the east side of lot 294 and allowing it 52½ feet, and then measuring Brown's lot 52½ feet he fell about 5 inches short of where the fence between plaintiffs and M'Kinney's lots stands now; he had reason for measuring lot 294. The owner of that lot has his east line fixed by his house adjoining plaintiffs' lot, which house has stood more than thirty years; at the side of that house the measurement ought have begun. But this is not all, he then went two lots east and he measured those lots, and again fell five inches short of the fence. This is his testimony but I believe he was not understood—for he says afterwards that this throws the fence five inches on the plaintiffs' lot. The sum of the matter is, the plaintiffs suppose there are four or five inches more in the front of lots 295, 296, and 297 than they call for, and he wanted the whole or at least one third of this overplus measure.

IX.—2 x*

[Brown v. M'Kinney.]

This is no new thing to me; although it is not common in town lots, it is very common in tracts of land, and we every year in former times met with a man who, if he thought his neighbour had some overplus land, wished to take some of it into his own care; and we have cases where very accurate measures have occasioned very unprofitable lawsuits, of which the Cherry Alley case in 7th *Watts* is an instance. But James Pople measured with a ten feet pole and measured four lots instead of one, and there is no evidence that even then he began at the proper points.

Colonel Roberts, who I understand is a regulator in the borough, went out at the adjournment of the court and he found that measuring from the house on 294 to the fence between plaintiffs and M'Kinneys, plaintiffs have their full distance; but to understand the points proposed to the court and the errors assigned, we must go back. Plaintiff showed that Jonathan Keanly owned the lot more than twenty years ago and rented to several persons in succession until the plaintiffs bought it in 1838; the plaintiffs also proved by a witness that many years ago there was a ball alley on M'Kinney's lot, and to enlarge it an agreement was made for permission to move the fence in on the lot in question nearly four feet; this was only the breadth of the ball alley; that the person who occupied M'Kinney's lot agreed to pay and did pay two dollars a year rent for this ground: it was also proved by plaintiffs' witnesses, that there had been a fence between the plaintiffs' lot and M'Kinney's which had stood in the same place more than twenty one years, but this fence was not straight, that about half way back on M'Kinney's lot, stood an old frame stable. It was also proved by plaintiffs' witnesses that soon after this suit was commenced the parties took the regulators of the borough to the lots, who with a standard pole measured off to plaintiff 52 feet six inches, and marked the point. That M'Kinney who did not live on this lot, but a long distance from it, had his fence moved to this line; that he moved his stable some distance in on his old lot, and moved the crooked fence which had given him possession of a small part of plaintiffs' lot since before Keanly bought it—in short that he gave up all to the line fixed by the regulators. After this, in April 1839, he by leave of the court filed a disclaimer as to every part of lot No. 295. But plaintiffs would not stop his proceedings. It appeared that Zearing joined M'Kinney's two lots on the east, and when M'Kinney was improving on that side he and Zearing had agreed on a point as the line between them, without inquiring whether this was the true point, or whether Zearing had not given up a few inches to M'Kinney. The plaintiffs, as I stated before, went and measured M'Kinney's two lots and found a five inches of overplus and this suit was continued. It had always been the wish of M'Kinney to stop the contest and for this purpose he had moved his stable and his fence and given plaintiffs what he could have held by the statute of limitations. For it can not be disputed that an occupa-

[Brown v. M'Kinney.]

tion up to a fence on each side by a party or two parties for more than 21 years, each party claiming the land on his side as his own gives to each an incontestible right up to the fence and equally whether the fence is precisely on the right line or not. It is time that it should be settled beyond dispute that where a person in possession by a fence as his line or by a house or stable for more than twenty-one years his possession establishes his right. A possession claming as his own is in law and reason adverse to all the world—and as much so if he has never heard of an adverse claim as if he had always known of it.

Judgment affirmed.