812 A.2d 558

Frank A. ZEGLIN, Jr., and Tammy Lee Zeglin, Appellants,

v.

Sean E. GAHAGEN and Kimberlee H. Gahagen, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 10, 2002.

Decided Dec. 19, 2002.

322

James Rill Cascio, Somerset, for Frank and Tammy Zeglin.

William E. Seger, Somerset, for Sean and Kimberlee Gahagen.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, and EAKIN, JJ.

## *OPINION*

Justice SAYLOR.

In this appeal involving a boundary dispute, the question presented is whether privity of estate between succeeding landowners is required to support tacking periods of ownership to form the requisite twenty-one-year period under acquiescence theory.

Appellants, Frank and Tammy Zeglin, and Appellees, Sean and Kimberlee Gahagen, own adjoining properties in Windber, Paint Township, Somerset County. The Zeglins purchased in 1977 from Cora Murphy, who, together with her late husband, had owned the property since 1937. The Gahagens bought from Margaret Swincinski in 1989, who had acquired the parcel in 1979 from the previous owners since 1972.

In 1995, the Gahagens employed a professional to survey their property and learned that their deed described a boundary on the Zeglins' side of a line marked by a row of bushes, utility pole, and fence that had been added by the Zeglins. The surveyor therefore concluded that the Gahagens' property extended over such visible line, and this was confirmed in a subsequent survey commissioned by the Zeglins. The Gahagens notified the Zeglins that a portion of their driveway encroached on their land, removed the bushes, and constructed a retaining wall adjacent to the surveyed boundary. The Zeglins responded by filing a complaint against the Gahagens sounding in ejectment and trespass and claiming ownership up to the line previously demarcated by the bushes, utility pole, and fence. In furtherance of this position, the Zeglins relied, *inter alia,* on the doctrine of acquiescence in a boundary, alleging that their occupancy and possession, together with that of their predecessors in title, for a period of more than twenty-one years established the visible line as the legal boundary. The Gahagens filed an answer and counterclaim.

In March of 2000, following a non-jury trial, the common pleas court issued a *decree nisi* in favor of the Zeglins, which it later made final. In accompanying opinions, the court summarized the acquiescence doctrine as follows:

> an occupation up to a fence on each side by a party or two parties for more than 21 years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence, whether the fence is precisely on the right line or not; and this is so although the parties may not have consented specifically to the fence in question.

*Zeglin v. Gahagen,* No. 369 Civ.1999, *slip op.* at 4 (C.P. Somerset Feb. 10, 2000) (Gibson, J.) ("Common Pleas Court Opinion") (quoting *Berzonski v. Holsopple,* 28 Som. Leg. J. 342, 358 (1973) (Coffroth, P.J.)). The court identified as the basis for the principle public policy favoring peace and the repose of titles. It reasoned that, for a period of more than twenty-one years, the Zeglins, the Gahagens, and their predecessors in interest had recognized and acquiesced in a boundary line demarcated by the hedgerow (and also highlighted by the fence maintained by the Zeglins through a portion of that time period). Although the Zeglins had occupied the property for only eighteen years prior to the Gahagens' actions, the court permitted them to tack the period of ownership by the Murphys, despite the fact that Cora Murphy had not specifically and formally conveyed her purported interest in the disputed tract to the Zeglins in the written deed. As pertains to tacking under the doctrine of adverse possession, the court recognized the requirement in Pennsylvania of privity of estate, namely, a higher degree of relation than that of mere grantor and grantee of a main parcel, generally comprised of specific and formal conveyance of the predecessor's interest in the disputed tract where the transfer is between unrelated parties. *See* Common Pleas Court Opinion, *slip op.* at 15 (quoting *Baylor v. Soska,* 540 Pa. 435, 438–39, 658 A.2d 743, 744–45 (1995)). The common pleas court found, however, that Pennsylvania courts had distinguished acquiescence in a boundary by applying the less rigorous requirement of privity of possession to claims predicated on such theory. *See id.* at 5

("Pennsylvania courts have adopted the view that succeeding owners of property are bound by the fences that were accepted and recognized by former owners even without any other privity or formal transfer of the area possessed adversely." (citing *Berzonski,* 28 Som. Leg. J. at 358)).

On the Gahagens' appeal, the Superior Court reversed in a published decision. *See Zeglin v. Gahagen,* 774 A.2d 781 (Pa.Super.2001). At the outset, it acknowledged the limitations on appellate review pertaining to matters of equity. *See id.* at 783 (" 'Our scope [and standard] of review in matters of equity [are] narrow and limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed or whether there has been a manifest abuse of discretion' " (citation omitted; interlineations in original)). The court determined, however, that, just as in the case of adverse possession, privity of estate is an essential prerequisite to employment of tacking to perfect a claim under acquiescence theory. *See id.* at 784–85 (citing *Plott v. Cole,* 377 Pa.Super. 585, 596, 547 A.2d 1216, 1222 (1988)). Accordingly, the Superior Court held that the common pleas court erred by permitting the Zeglins to tack the period of the Murphys' ownership based on privity of possession alone. *See id.*

Presently, the Zeglins argue that privity of estate as a prerequisite to tacking is inappropriate to, and contrary to the doctrine of, acquiescence in a boundary, since an underlying premise of such theory is that the evidence of longstanding acquiescence in a physical boundary by adjoining property owners will control over contrary deed calls. The Zeglins distinguish *Plott v. Cole,* cited by the Superior Court, as allowing for creation of privity by "other acts," and not solely by references culled from a deed. The Gahagens concede that the privity of estate requirement has not expressly been attached by Pennsylvania courts in acquiescence cases, but contend that such a requirement would alleviate confusion among landowners.

The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long

been recognized in Pennsylvania.[1] Two elements are prerequisites: 1) each party must have claimed and occupied the land on his side of the line as his own; and 2) such occupation must have continued for the statutory period of twenty-one years. *See Jedlicka v. Clemmer,* 450 Pa.Super. 647, 654, 677 A.2d 1232, 1235 (1996); *Plott,* 377 Pa.Super. at 594, 547 A.2d at 1221. As recognized by the Superior Court and the common pleas court, the doctrine functions as a rule of repose to quiet title and discourage vexatious litigation. *See id.* at 592, 547 A.2d at 1220.

■■■ Although the elements are simply stated, courts have had difficulty tracing the theoretical underpinnings of the acquiescence precept.[2] In Pennsylvania, courts frequently have distinguished the doctrine from adverse possession, *see, e.g., Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 267, 545 A.2d 926, 930 (1988); *Inn Le'Daerda, Inc. v. Davis,* 241 Pa.Super. 150, 163 n. 7, 360 A.2d 209, 215 n. 7 (1976), and in recent cases have categorized it, under the umbrella of "consentable boundaries," with a separate theory premised on dispute and compromise.[3] An examination of the

---

1.  *See Reiter v. McJunkin,* 173 Pa. 82, 84, 33 A. 1012 (1896) ("After 21 years of occupancy up to a fence on each side as a line fence, it is not material to inquire whether the fence is on the right line or not."); *see also Dimura v. Williams,* 446 Pa. 316, 319, 286 A.2d 370, 371 (1972); *Brown v. McKinney,* 9 Watts 565, 567 (Pa.1840); *Martz v. Hartley,* 4 Watts 261, 262–63 (Pa.1835); *accord Schimp v. Allaman,* 442 Pa.Super. 365, 369, 659 A.2d 1032, 1034 (1995) ("a boundary line may be proved by a long-standing fence without proof of a dispute and its settlement or compromise" (citation omitted)).

2.  *See generally* HERBERT THORNDIKE TIFFANY, THE LAW OF REAL PROPERTY § 1159 (1975 & Supp.2001) ("The decisions of a particular court [concerning acquiescence in boundaries] are not infrequently lacking in entire consistency, one with another, and occasionally the judicial discussion of the subject is such as to leave us somewhat in doubt as to the exact position of the court on the question."); Annotation, *Fence as a Factor in Fixing Location of Boundary Line—Modern Cases,* 7 A.L.R.4th 53, 59 (1981 & Supp.2002) ("It has been said that the doctrine of boundary by acquiescence is in chaotic condition." (citation omitted)).

3.  *See also Corbin v. Cowan,* 716 A.2d 614, 617 (Pa.Super.1998); *Sorg v. Cunningham,* 455 Pa.Super. 171, 178, 687 A.2d 846, 849 (1997); *Plauchak v. Boling,* 439 Pa.Super. 156, 165, 653 A.2d 671, 675 (1995).

decisional law demonstrates, however, that the doctrinal roots of acquiescence are grounded in adverse possession theory;[4] indeed, occupancy with open manifestations of ownership throughout the statutory period will generally satisfy the traditional elements of adverse possession.[5] Decisions involv-

The earlier decisions generally reserved the terms "consentable line" and "consentable boundary" for the dispute and agreement paradigm. *See Culver v. Hazlett,* 13 Pa.Super. 323, 328 (1900) (describing "consentable line" as "a technical term, the basis of which is a dispute between adjoining owners and the compromise of such a dispute by a line agreed upon between them" (citing *Perkins v. Gay,* 3 Serg. & Rawle 327 (Pa.1817))); *accord Beals v. Allison,* 161 Pa.Super. 125, 129, 54 A.2d 84, 86 (1947); *Ross v. Golden,* 146 Pa.Super. 417, 423, 22 A.2d 310, 313 (1941); *Miles v. Pennsylvania Coal Co.,* 245 Pa. 94, 95, 91 A. 211, 212 (1914); *Newton v. Smith,* 40 Pa.Super. 615, 619 (1909). Nevertheless, despite the distinction between acquiescence and consentable line theories, courts used the term "consent" loosely in acquiescence cases, *see, e.g., Dimura,* 446 Pa. at 319, 286 A.2d at 370-71, and ultimately the "consentable boundaries" rubric emerged to cover both theories, apparently in *Niles,* 376 Pa.Super. at 267, 545 A.2d at 930.

4. *See, e.g., Reiter,* 173 Pa. at 84, 33 A. at 1012 ("The maintenance of a line fence between owners of adjoining lands by their acts, up to which each claims and occupies, is a concession by each of the open, adverse possession by the other of that which is on his side of such division fence, which after twenty-one years will give title, though subsequent surveys may show that the fence was not exactly upon the surveyed line."); *Brown,* 9 Watts. at 567 ("A possession claim[ed] as [one's] own is in law and reason adverse to all the world—and as much so as if he has never heard of an adverse claim as if he had always known of it."); *Adams v. Tamaqua Underwear Co.,* 105 Pa.Super. 339, 342, 161 A. 416, 417 (1932); *Culver,* 13 Pa.Super. at 328–29 (noting that adverse possession is the foundation for recognized or "claim-to" line theories); *accord Penn v. Ivey,* 615 P.2d 1, 4 n. 4 (Alaska 1980) ("It is well recognized that a fence, as a matter of law, is 'one of the strongest indications of adverse possession.'" (citing cases)).

5. *See generally Baylor,* 540 Pa. at 438, 658 A.2d at 744 (delineating the elements of adverse possession as actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years). Notably, hostility, as a requirement of adverse possession, does not denote ill will, but rather, the intent to hold the property against the record title holder. *See Vlachos v. Witherow,* 383 Pa. 174, 176, 118 A.2d 174, 177 (1955); *accord* William Sternberg, *The Element of Hostility in Adverse Possession,* 6 TEMPLE L.Q. 207, 208 (1932) (stating that "a person is in hostile possession when he acts with reference to the land in the same way that the owner would act"). Moreover, "acquiescence" in the context of disputed boundaries "denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." Edward G. Mascolo, *A Primer On Adverse Possession,* 66

ing acquiescence are frequently distinguishable from adverse possession cases only in that possession in the former are often based on a mistake as to the location of property lines. *See generally* Annotation, *Adverse Possession Involving Ignorance or Mistake as to Boundaries—Modern Views*, 80 A.L.R.2d 1171, 1173 (1961 & Supp.2002).[6]

This confluence between acquiescence and adverse possession principles militates against the Zeglins' position, in light of this Court's determination, presently recognized by both the Superior Court and the common pleas court, that privity of estate is a prerequisite to tacking under adverse possession theory. *See Baylor*, 540 Pa. at 441, 658 A.2d at 746 (holding that "the only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed").

Even so, the contrary analysis reflected in the Somerset County decisions is noteworthy and merits further consideration. Prior to *Baylor*, in the decision presently relied upon by the common pleas court, President Judge Coffroth made the case that the lesser standard of privity of possession

CONN. B.J. 303, 312–13 (Aug. 1992); *see also id.* at 313 (noting that, "in the case of acquiescence, the use or occupancy of the premises is hostile to and against the interests of the title owner"); *accord Cremer v. Cremer Rodeo Land and Livestock Co.*, 192 Mont. 208, 627 P.2d 1199, 1201 (1981) (distinguishing acquiescence from permission).

6. Mistake, however, does not in and of itself negate application of adverse possession in Pennsylvania. *See Schlagel v. Lombardi*, 337 Pa.Super. 83, 486 A.2d 491, 494 (1984) (noting that "most jurisdictions 'deem the animus of the possessor irrelevant'[;] ... Pennsylvania follows the majority view" (quoting *Lyons v. Andrews*, 226 Pa.Super. 351, 351–60, 313 A.2d 313, 316–17 (1973))). In this regard, the Maryland Court of Appeals has elaborated as follows:

The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial.

*Tamburo v. Miller*, 203 Md. 329, 100 A.2d 818, 821 (1953).

should govern tacking successive periods of adverse posses-
sion, at least in boundary controversies. He reasoned that:

> [t]he circumstances of unified use, and physical transfer of
> possession of the disputed tract, and continued adverse use
> thereof and of the conveyed tract as an incorporated and
> unified whole, show that the parties intended to transfer not
> only the title to the conveyed tract, but also the possession
> to the disputed area whose use was integrated with the
> conveyed tract, notwithstanding the omission from the deed
> of any mention of the disputed area.

*Berzonski*, 28 Som Leg. J. at 370. Further, he described
privity of possession as "the almost universal rule" supporting
tacking in the boundary dispute context. *See id.* at 367 (citing
3 AM.JUR.2D ADVERSE POSSESSION § 80 (Supp.2002)).[7,8] With

---

**7.** The citations to secondary authorities employed by President Judge
Coffroth are updated here.

**8.** As summarized by one commentator:

> At the present time, making allowance for contrary rulings still
> apparently adhered to in a few jurisdictions, the cases, especially the
> later ones, run generally to the effect that in order to permit the
> tacking of successive adverse possessions of vendor and purchaser of
> an area not within the premises as described in the deed or contract
> but contiguous thereto, the composite fact to be established is the
> intended and actual transfer or delivery of possession of such area to
> the grantee or vendee as successor in ownership or claim.

Annotation, *Tacking Adverse Possession of Area Not Within Description
of Deed or Contract*, 17 A.L.R.2d 1128, 1131–32 (2002); *see also*
HERBERT T. TIFFANY AND BASIL JONES, TIFFANY REAL PROPERTY § 1207 (3d ed.
2002) ("There is sufficient privity for this purpose, it would seem, when
the use[ ] is exercised, for the benefit of neighboring land, by successive
owners or possessors of such land, between whom there exists some
legal relation other than that of disseisor and disseisee."); *id.* at § 1146
("This privity may be based upon contract, estate, or blood relationship,
or upon any connecting relationship which will prevent a break in the
adverse possessions and refer the several possessions to the original
entry, and for this purpose no written transfer or agreement is neces-
sary[;] [o]f course, there must be a transfer of a possessory right
initially, in order that the transferee be entitled to claim a tacking of the
transferor's possession."); 3 AM.JUR 2D ADVERSE POSSESSION § 79 (2002)
(stating that "if one adverse claimant, by agreement, surrenders posses-
sion to another, and the acts of the parties are such that the two
possessions actually connect, leaving no interval for the constructive
possession of the true owner to intervene, the two possessions are
blended into one, and the running of the limitation period on the right
of the true owner to reclaim the land is continued").

regard to Pennsylvania, President Judge Coffroth observed that both this Court's decision in *Scheetz v. Fitzwater*, 5 Pa. 126 (1847), and the Superior Court's in *Stark v. Lardin*, 133 Pa.Super. 96, 1 A.2d 784 (1938), approved tacking on such terms, where there was no valid written transfer of the grantor's adverse possession of the disputed area to the subsequent owner. *See Berzonski*, 28 Som. Leg. J. at 369; [9] *accord Lenihan v. Davis*, 152 Pa.Super. 47, 49–50, 31 A.2d 434, 435 (1943).

*Berzonski* nonetheless acknowledged a contrary line of Superior Court authority, exemplified by *Masters v. Local Union No. 472, United Mine Workers*, 146 Pa.Super. 143, 22 A.2d 70 (1941), which implemented a requirement of privity of estate to support tacking without mention of *Scheetz* or *Stark*. The court, however, criticized *Masters'* reasoning as predicated on the erroneous assumption that landowners would generally lay claim to only part of the land that they possess or occupy,[10]

9. In *Scheetz*, 5 Pa. at 132, the Court specifically indicated that "possession may be passed without title" and "[a] proprietor who occupies his neighbour's land as a part of his farm, may certainly transfer his possession of the whole by a conveyance of the farm."

10. The *Masters* reasoning has been similarly criticized in the commentary, as, for example, in the following passage from an annotation:

In *Masters v. Local Union No. 472*, ... it was held that "the insurmountable difficulty" confronting defendant in making out title by adverse possession to the area on which the buildings stood was that in title by adverse possession to the area on which the buildings stood was that in neither "the deed" to the association nor in the deed from the latter's trustee in bankruptcy to the defendant was there "any conveyance" of the rights acquired by the grantor by possession.... The court quoted as controlling the language of *Zubler v. Schrack*, (a case not on its facts within the scope of this annotation, nor at all similar to the ones here dealt with) to the effect that "each succeeding occupant must show title under his predecessor, so as to preserve a unity of possession," a statement which it seems would be erroneously construed to mean that such "title" must be transferred by a deed, or by a deed describing the land subsequently in controversy. In fact, somewhat strangely, because not supporting the position taken by the court in the *Masters* Case, the court therein quoted from the opinion rendered in the *Schrack* Case, in the subsequent appeal in 46 Pa. 67, that "an adverse possession begun and continued for a time, in order to be available to a successor, must be transferred to such successor in some lawful manner. This is true as that property can only be rightfully acquired with the assent of its owner, or vested by operation of law." The latter language, it will be observed, is

and observed that in another line of cases, the Superior Court persisted in the idea that an intent to convey more than the premises actually described in a deed could be inferred from acts or circumstances apart from the deed itself. *See Berzonski,* 28 Som. Leg. J. at 372–73 (citing *Gerhart v. Hilsenbeck,* 164 Pa.Super. 85, 89, 63 A.2d 124, 126–27 (1949)). Based on these latter decisions, President Judge Coffroth concluded that "Pennsylvania has joined or rejoined the main stream of authority and validates . . . that privity may be established by oral agreement." *Id.* at 374.

Subsequent Pennsylvania cases generally followed *Masters* without reference to the view of a majority of jurisdictions as embodied in the reasoning of President Judge Coffroth. *See Glenn v. Shuey,* 407 Pa.Super. 213, 225, 595 A.2d 606, 612 (1991); *Wittig v. Carlacci,* 370 Pa.Super. 584, 589–90, 537 A.2d 29, 32 (1988); *Plott,* 377 Pa.Super. at 596, 547 A.2d at 1222; *Castronuovo v. Sordoni,* 357 Pa.Super. 187, 193–94, 515 A.2d 927, 930–31 (1986). Nevertheless, prior to *Baylor,* courts continued to note an "other circumstances exception" based on *Scheetz* and *Stark. See, e.g., Glenn,* 407 Pa.Super. at 226 n. 6, 595 A.2d at 613 n. 6; *Wittig,* 370 Pa.Super. at 589–90, 537 A.2d at 32; *Castronuovo,* 357 Pa.Super. at 193, 515 A.2d at 931.[11] In *Baylor,* however, this Court dismissed the portion of the privity rules permitting the tacking based on acts or circumstances extrinsic to written deeds, reasoning that:

> [i]nterested parties have a right to discern from the record the state of the title of any parcel of land. If tacking were to be permitted because of vague, undefined "circumstances," there could and most likely would be no way for

clearly open to the construction that the "adverse possession" need not be transferred by a deed describing the premises held adversely, but simply "in some lawful manner."
Annotation, *Tacking Adverse Possession,* 17 A.L.R.2d at 1178–79.

11. Part of the confusion in the cases results from the fact that courts have employed the definition of privity of possession, *see* 3 AM JUR 2D ADVERSE POSSESSION § 79 ("Privity of possession is a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law."), in defining privity of estate. *See, e.g., Baylor,* 540 Pa. at 438–39, 658 A.2d at 744–45 (citations omitted); *see also supra* note 10.

one not a party to the conveyance to know this. But the law mandates that a person asserting a claim of adverse possession make this assertion openly and notoriously to all the world. There must be no secret that the adverse possessor is asserting a claim to the land in question. If the adverse possessor's claim is to be passed on to a successor in title, therefore, there must be some objective indicia of record by which it can be discerned with some degree of certainty that a claim of title by adverse possession is being made and that the duration of this claim has been passed on to a successor in title.

*Id.* at 440, 658 A.2d at 745–46 (citation omitted).

■ Although *Baylor* was a boundary case, it proceeded on the theory of adverse possession, as opposed to acquiescence. While we recognize that this is a fine basis for distinction given the relatedness of these doctrines, strict application of *Baylor*'s holding in the acquiescence paradigm would eliminate tacking in cases involving successive owners and mistaken boundaries, which would appear to be the prevailing set of circumstances in this line of decisions. *See* Annotation, *Tacking Adverse Possession*, 17 A.L.R.2d at 1131. Indeed, perhaps for this reason, Pennsylvania and other courts have previously suggested the application of more flexible rules in the acquiescence paradigm.[12]

12. *See, e.g., Plauchak*, 439 Pa.Super. at 170, 653 A.2d at 677–78; *Mayor and Town Council of New Market v. Armstrong*, 42 Md.App. 227, 400 A.2d 425, 433–34 (1979) (indicating that "color of title [is] not necessary for tacking to provide continuity of possession of land, provided the land in question [is] contiguous to that described in a deed, and that lands both titled and untitled were part of a close, apparent by reason of physical boundaries such as fences or hedges." (citations omitted)); *accord* 11 C.J.S. BOUNDARIES § 86 (Aug. 2002) ("Recognition and acquiescence of one owner may be tacked to that of a succeeding one, and privity of estate between successive owners is not necessary to permit of a technical tacking of their periods of holding to make out the statutory period." (footnotes omitted)); *cf. Howard v. Kunto*, 3 Wash.App. 393, 477 P.2d 210, 215 (1970) (characterizing the requirement of privity as merely "a judicial recognition of the need for some reasonable connection between successive occupants so as to raise their claim of right above status of the wrongdoer or the trespasser"), *overruled on other grounds, Chaplin v. Sanders*, 100 Wash.2d 853, 676 P.2d 431 (1984).

As President Judge Coffroth aptly observed, the reason why privity of estate should not be deemed necessary to support tacking in this setting is, simply, because a prospective purchaser will see the fence or similar marking; given its "obvious presence as apparent boundary," he is therefore put on notice to inquire about its origin, history, and function. *See Berzonski*, 28 Som. Leg. J. at 361 ("After 21 years, the chips will be allowed to fall where they may, for reasons of equity and peace.").

Accordingly, we find the majority view (requiring only privity of possession) better suited to claims brought under a theory of acquiescence in a boundary. We hold, therefore, that tacking is permitted in such context upon sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest.

The order of the Superior Court is reversed, and the case is remanded for reinstatement of the final decree of the common pleas court.