## Cherry Timber Associates, Inc. v. Mitchell

C.P. of Clearfield County, no. 06-1498-CD.

*Keith Pemrick*, for plaintiffs.

*Christopher Mohney & Dawn Sugrue,* for defendants.

AMMERMAN, *J.,* February 10, 2010——On September 14, 2006, Cherry Timber Associates, Inc. and Chagrin Land Limited Partnership, (hereinafter "plaintiffs"), filed a complaint for declaratory judgment against Audra Mitchell, John D. Duttry, Thelma Bush, and Beverly R. Williams (a/k/a Beverly Copelli), (hereinafter "defendants").[1] Said declaratory judgment pertains to funds placed in escrow, as a result of timber harvesting contract, where the parties dispute the ownership of property in Huston Township, Clearfield County, from which the timber was harvested. The remaining defendants are all one-third (1/3) owners as tenants-in-common of a parcel of land in Huston Township, and on October 18, 1994, entered into a Timber Harvest Agreement, ("agreement") with Mitchell Lumber Company, ("Mitchell Lumber"). Between October 18, 1994 and October 18, 1995, Mitchell Lumber harvested timber pursuant to the agreement. Plaintiffs alleged that in the course of harvesting, Mitchell Lumber did cut and remove merchantable timber from Cherry Timber property.

When plaintiffs advised Mitchell Lumber that they believed it had wrongfully removed timber from the Cherry Timber property, it agreed to deposit forty-five thousand ($45,000.00) dollars into an escrow account pending a resolution of the dispute as to the ownership of the harvested timber. The funds were sent to Scott V. Jones, Esquire ("escrow agent") and were deposited as "Scott V. Jones, Escrow agent for Mitchell Lumber Co.

---

1. By order dated August 20, 2008, this action was discontinued as to defendant Audra Mitchell, upon her petition for order to discontinue action as to defendant Audra Mitchell, which was granted by this court.

and Chagrin Land Limited Partnership," (hereinafter "escrow" or "escrow funds"). The parties agreed via correspondence that said funds in escrow would remain in escrow until an agreement was reached, and if that did not occur, upon decision of a court of competent jurisdiction. The parties were unable to reach an agreement regarding the disposition of the escrow funds, and the present matter was instituted.

On April 21-22, 2009 a non-jury trial was held, and on July 28, 2009 this court issued an order in favor of the plaintiffs. Defendant, John D. Duttry, filed a notice of appeal on December 16, 2009. By order of this court dated December 22, 2009, defendant Duttry was ordered to file a concise statement of the matters complained of on appeal in accordance with PA.R.A.P. 1925(b). Defendant Duttry timely filed said concise statement, setting forth various issues raised on appeal.

Defendant Duttry first contends that this court erred in awarding the escrow funds to Chagrin Land Limited Partnership, (hereinafter "Chagrin"), and by failing to find that Chagrin had no color of title to the land and timber, and therefore to the proceeds. By clarification, the court, in its order dated July 28, 2009, found that plaintiff Cherry Timber Associates, (hereinafter "Cherry Timber"), had met its burden of proof to establish ownership of the property where the timber was harvested. At no time did plaintiff Chagrin claim ownership to the property in question, but merely was an affiliate of plaintiff Cherry Timber through common ownership. Chagrin's involvement in this matter, beyond the common ownership with Cherry Timber, dealt with the escrow account originally being deposited as "Scott V. Jones, Escrow agent for Mitchell Lumber

Co. and Chagrin Land Limited Partnership." Further, the escrow funds had been in various interest bearing accounts and instruments since 1995, and in 2005 said funds were re-invested in a two-year certificate of deposit at First Commonwealth Bank. The aforesaid certificate of deposit identifies Mitchell Lumber and Chagrin Land Limited Partnership as the owners. The court finds that Chagrin was merely listed as the owner on the escrow funds, acting as a quasi-agent of Cherry Timber, and as such was correctly determined to that both Chagrin and Cherry Timber were entitled to the funds in escrow.

Defendant Duttry broadly asserts that this court erred in awarding the money in the escrow account to Cherry Timber. Defendant Duttry similarly asserts that the court erred in failing to conclude that defendants were the owners of the disputed sixty (60) acre tract in Huston Township, Clearfield County.[2] Specifically, defendant Duttry avers that the court erred in failing to conclude that plaintiffs' predecessors in title, Green Glen Corporation, (hereinafter "Green Glen"), had recognized and acquiesced in the location of the sixty (60) acre tract in the northern end of the old Bucksbee Farm.[3] This court finds that defendant Duttry (and defendants as a whole) did not present sufficient evidence to establish the elements of the doctrine

2. During trial the same tract was referred to as sixty (60) acres and fifty-eight (58) acres, and the court will reference said tract as being sixty (60) acres herein.

3. The old Bucksbee Farm property included a total acreage of roughly 180 acres. Having been split into two separate parcels of 123, acres and sixty (60) acres by subsequent owner Green Glen, the parties dispute rests on the location of the parcels within the overall 180 acres. Plaintiff Cherry Timber asserts that its sixty (60) acre tract is in the southwestern portion, with defendants' property being in the northeastern portion. Defendants' claim the opposite, arguing their 123 acre tract is in the southern portion, and plaintiff's tract is in the northeastern portion.

of recognition and acquiescence as a means of rebutting plaintiffs' evidence regarding the boundary line between the subject properties. Conversely, this court finds that plaintiff Cherry Timber presented sufficient evidence to clearly establish chain of title and ownership of the sixty (60) acre tract in question, with its location at the southern end of the old Bucksbee Farm.

"The establishment of a boundary line by acquiescence of a statutory period of time of twenty-one years has long been recognized in Pennsylvania. *Zeglin v. Gahagen*, 571 Pa. 321, 325-26, 812 A.2d 558, 561 (2002). Two elements are required to be shown in order to establish a boundary line by acquiescence: (1) each party must have claimed and occupied the land on his side of the line as his own, and (2) such occupation must have continued for the statutory period of twenty-one years. *Id.* at 326, 561 (citations omitted); see also, *Moore v. Moore*, 921 A.2d 1, 5 (Pa. Super. 2007). Further, the doctrine of acquiescence is commonly associated with the erection and maintenance of a fence as a visible demarcation of the boundary line. See *Zeglin*, 571 Pa. 321, 812 A.2d 558; *Dimura v. Williams*, 446 Pa. 316, 286 A.2d 370 (1972); *Reiter v. McJunkin*, 173 Pa. 82, 33 A. 1011 (1896); *Schimp v. Allaman*, 659 A.2d 1032 (Pa. Super. 1995).

In *Niles v. Fall Creek*, the court explained the evidence necessary to establish a consentable line by recognition and acquiescence:

[O]ur courts have long recognized, however, that a boundary line may be proved by a long-standing fence without proof of a dispute and its settlement by a compromise. In *Dimura v. Williams*, [446 Pa. 316, 286

A.2d 370 (Pa. 1972)], the court noted:

> It cannot be disputed that occupation up to a fence on each side by a party or two parties for more than twenty-one years, each party claiming the land on his side as his own, gives to each an incontestable right up to the fence, and equally whether the fence is precisely on the right line or not. *Id.* 446 Pa. at 319, 286 A.2d at 371.

> In such a situation the parties need not have specifically consented to the location of the line. *Dimura v. Williams*, supra [446 Pa.] at 319, 286 A.2d at 371. It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners. See *Miles v. Pennsylvania Coal Co.*, 245 Pa. 94, 91 A.211 (Pa. 1914); *Reiter v. McJunkin*, 173 Pa. 82, 33 A.1012 (Pa. 1896).

545 A.2d 926, 930 (Pa. Super. 1988) (quoting *Inn Le'Daerda, Inc. v. Davis*, 360 A.2d 209, 215-16 (Pa. Super. 1976)).

In the present matter, defendant Duttry did not set forth sufficient evidence to show that there was occupation up to a fence and/or other boundary by his predecessors in interest. Moreover, Lional Alexander testified that there was no fence line or indication of a prior fence line separating the properties; therefore defendants cannot argue they occupied the land up to any particular point or border. Defendant Duttry and defendant Thelma Bush acknowledged that there were no structures on the property, and neither they nor their father (previous owner) had ever posted said property. Mere occasional timbering and/or hunting are not sufficient to establish a consentable line

by recognition and acquiescence. Mr. Christopher Guth (employee of plaintiffs' parent company-Industrial Timber and Lumber Company) testified that on a prior occasion, there had been a question about timber harvesting in this area, but after employing an abstractor, Fran McDermott, it was determined that the harvesting was occurring on the 123 acres northeast of the sixty (60) acre tract. The court deems the testimony of Mr. Guth to be credible. Also, this court finds that defendants' assertion that no one had previously challenged their ownership of the property from which the timber was cut was insufficient to establish ownership through the doctrine of recognition and acquiescence. Defendant Duttry has not shown that he and/or his fellow tenants-in-common or predecessors in title actually occupied the land in dispute for the requisite twenty-one (21) years.

Plaintiff Cherry Timber met its burden of proving that it owned the property where the timber was harvested. Plaintiffs' presented the 1927 Deed from John E. Dubois to Bucksbee, which contained a metes and bounds description of the property based on a May 29, 1922 survey by J.E. Fry, (plaintiffs' exhibit 1). Lional Alexander, a land surveyor, was engaged to perform a retracement survey of the property to establish its actual location. Mr. Alexander testified that J.E. Fry was known to be a surveyor who performed surveying work for John E. Dubois in the early 1900s, and that he was able to locate original field notes made by Mr. Fry when he surveyed the Cherry Timber property in 1922, (plaintiffs' exhibit 6). Mr. Alexander testified that he also located extensive evidence of boundary lines for the sixty (60) acre parcel in the southern portion of the old Bucksbee Farm during his investigation of the

field, including but not limited to: tree lines, fence lines and a corner tree. Additionally, Mr. Alexander testified while doing research at the courthouse he located a deed for an adjoining property (plaintiffs' exhibit 5), which contained several calls that matched calls in the description in the 1927 deed from Dubois to Bucksbee. As a result, Mr. Alexander testified that it was his opinion "with certainty" that the sixty (60) acre parcel was parcel No. 119-E4-16 as shown on plaintiff's exhibit 9, which locates the parcel in the southwestern portion. Having noted his extensive training and experience, the court deems the testimony of Mr. Alexander to be credible.

The plaintiff's also presented the testimony of Zoe Withey and Michael D. Snyder, Esquire, in support of Cherry Timber's claim of ownership to the sixty (60) acre parcel from which the timber was harvested. Ms. Withey, an independent title abstractor, testified that during the course of constructing the chain of title for the Cherry Timber property, she checked all appropriate indices for adverse conveyances and found none. Regarding the 123 acre parcel, Ms. Withey also testified that the deed dated February 21, 1955, from Harry and Annie Bender to Harold E. Duttry and Mary Duttry (Deed Book 440, page 573), was the first to actually contain a description of the property, and said description placed the 123 acre parcel on the northern end of the land of the Green Glen.

Attorney Snyder reviewed the information contained in the Withey abstract, and concluded that the inclusion of parcel no. 21 in the deed of Green Glen to Cherry Timber, was legally sufficient to convey title to the sixty (60) acre parcel to Cherry Timber. In addition, attorney Snyder testified that the "...chain of title to this sixty (60) acre

parcel clearly identifies that sixty (60) acre piece right there," indicating the southwestern part of the Bucksbee tract. See Trial Transcript, Day II of II, p. 32, lines 4-5. The court finds the testimony of Ms. Withey and attorney Snyder to be credible. Also, the court finds further support from the tax assessment map for Huston Township (plaintiffs' exhibit 9) that located the sixty (60) acre parcel southwest of the 123 acre Duttry parcel.

In contrast to the abundant evidence presented by Cherry Timber in support of its claim to ownership of the sixty (60) acre tract in the southern portion, the defendants only presented a small amount of evidence in support of their claim of ownership. Defendants did not present any evidence or expert testimony to rebut the plaintiffs' evidence regarding Cherry Timber's ownership of the sixty (60) acre parcel. The testimony of Mary Anne Jackson merely showed that there had been mistakes in assessments records, which in itself was not sufficient to rebut the evidence set forth by plaintiffs. As testified by attorney Snyder, "...[assessment records] can be indicative. But deeds convey title to property, not assessment records." See Trial Transcript, Day II of II, p. 25, lines 12-13. Attorney Snyder further averred that if there's a conflict between an assessment record and a deed filed of record, "[t]he deed would control." See Trial Transcript, Day II of II, p. 25, lines 14-16. Defendants John Duttry and Thelma Bush's self-serving testimony merely showed they believed they owned the southwestern tract, but offered no viable evidence to support that claim beyond using the land for hunting and occasional timbering. The court finds this insufficient to rebut the plethora of evidence presented by plaintiffs.

The next ground for appeal set forth by defendant Duttry argues that the court erred in failing to find that the plaintiffs either individually and/or jointly were required to bring their claim for unlawful removal of timber from real estate within two (2) years of the date of such conversion pursuant to 42. PA.C.S.A. §8311(a) and 42. PA.C.S.A. §§5524(3), (4), (5), and (7). Similarly, defendant Duttry avers that the court also erred in failing to grants defendants' motion for summary judgment on the basis that plaintiffs' claim was barred by the statute of limitations. Plaintiffs' claim was filed as a declaratory judgment action seeking resolution of a dispute as to the ownership of the timber wrongfully harvested by Mitchell Lumber, and the funds deposited into escrow.[4] The declaratory judgment act provides that, "courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 PA.C.S.A §7532. The central issues of this action are: (1) the ownership of property from which Mitchell Lumber harvested timber pursuant to a Timber Harvest Agreement and (2) the ownership of escrow funds which are directly tied to the ownership of the property and timber.

Declaratory judgments are subject to the four-year "catch all" statute of limitations. *Wagner v. Apollo Gas Co.*, 582 A.2d 364 (Pa. Super. 1990) (citing 42 Pa.C.S.A. §5525(8)). The statute of limitations may be waived by

---

4. The court finds defendants' attempt to characterize plaintiffs' action as one of unlawful conversion of timber, which carries a two (2) year statute of Limitations, is improper. Plaintiffs' dispute is against defendants as to the ownership of the escrow funds, which is necessarily tied with the ownership of the timber, and is not against Mitchell Lumber for removing said timber.

the persons for whose benefit it exists, and the right to recover may be based on a waiver of the statute. *Com., Dept. of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (Pa. 1979); *Smith v. Pennsylvania Railroad Co.*, 304 Pa. 294, 156 A.89 (Pa. 1931); *Borough of Greensburg v. Public Service Commission of Pennsylvania*, 268 Pa. 177, 110 A. 750 (PA. 1920). It can be waived by explicit consent or by conduct. *Checchio By and Through Checchio v. Frankford Hospital-Torresdale Div.*, 717 A.2d 1058 (Pa. Super. 1998); *Cobbs v. Allied Chemical Corp.*, 661 A.2d 1375 (Pa. Super. 1995).

In this action, the court finds that defendants waived the four-year statute of limitations by their conduct. The court finds that in the correspondences between the parties' attorneys and the escrow agent, the parties agreed that the proceeds should remain in escrow until this matter was resolved. Specifically, by letter dated, April 5, 1995, counsel for defendant Duttry stated:

> [T]hus, I renew my suggestion to both you and Scott [escrow agent]. The money should be placed in an escrow account in the name of a representative of each landowner and Mr. Mitchell if he desires. The owner as determined by a court of competent jurisdiction would ultimately receive the funds. Resolution of the matter would require a court determination absent an earlier agreement and in any event, would require a survey of the entire tract, a survey of the individual tracts, and location of the disputed timber tract within it.

Plaintiff's exhibit no. 26.[5] In response to the above quoted

5. Appeared prior as defendants' exhibit 11 to defendants' motion for summary judgment, and was considered in the court's decision to

letter, counsel for plaintiffs replied via letter dated, April 10, 1995, stating:

> [P]lease be assured that the money presently held in escrow by Scott Jones will remain in escrow until after we have met and attempted to resolve this matter. In the event we agree that we cannot amicably resolve this dispute I would expect that we would enter into an agreement for the disposition of the escrow pending a decision of the court.

Defendants' Exhibit H.[6]

Also, Stephen Jilk testified that a meeting between the parties in this matter took place in July of 1996, and regarding the funds in escrow, Mr. Jilk stated "...they were to remain in escrow until the parties could agree or until it went to trial." See Trial Transcript, Day I of II, p. 81, lines 10-11. Scott V. Jones, Esquire, mirrored this same understanding, stating that the funds were to remain in escrow and "I was to continue as escrow agent until the matter was resolved either by agreement or litigation." See Trial Transcript, Day I of II, p. 126, lines 13-14. Additionally, Barry Garbarino, Esquire, formally counsel for plaintiffs' at the July 2006 meeting, testified it was his understanding at the conclusion of said meeting that, "Scott [Jones, Esq.] would continue to keep, retain, the escrow account until either John [Sughrue, Esq.] and I agreed and resolved the matter or one of us litigated the issue and we had a final result from the court." See Trial Transcript, Day I of II, p. 137, lines 15-18.

---

deny said motion.

6. Appeared prior as defendants' exhibit 12 to defendants' motion for summary judgment, and was considered in the court's decision to deny said motion.

In accordance with the agreement between the parties, having not been able to come to a mutual agreement on the underlying dispute, the funds remained in escrow until this court determined that plaintiffs were entitled to the funds after non-jury trial on April 21-22, 2009. Therefore, the court properly denied defendant Duttry's motion for summary judgment and the case went to trial for a determination as to the ownership of the property and funds in escrow, as agreed by the parties.

Defendant Duttry's last contention is that the court erred in discontinuing the actions against co-defendant Audra Mitchell, and dismissing her from this case. Specifically, defendant Duttry avers that the court erred in dismissing Mrs. Mitchell because she was a necessary and indispensable party to this litigation. Mrs. Mitchell, as the widow and sole heir of Paul Mitchell, was the successor in interest to any claim Mitchell Lumber might have had to the escrow funds. Mitchell Lumber originally paid the money into escrow because there was a dispute as to the ownership of a portion of the trees harvested under the agreement. Mitchell Lumber understood that it owed the proceeds to the owner of the property from which the timber was removed, and it voluntarily paid the money into escrow pending the resolution of who was entitled to the funds. Defendants' attempts to argue that plaintiffs threatened or coerced Paul Mitchell into having the funds placed into escrow are unfounded. After being asked, "Did he [Mr. Jilk] make any kind of threats or try to intimidate or coerce you in any way?" Mrs. Mitchell definitely testified, "No." See Trial Transcript, Day I of II, p. 109, lines 20-22.

During pendency of this case Mrs. Mitchell filed

a petition wherein she asked the court to discontinue the action as to her, pursuant to PA.R.C.P. 229(b). In said petition, Mrs. Mitchell stated that she "...stakes no claim to the money deposited into escrow by Mitchell Lumber Company, generally releases any claim to the money that she is deemed to have under law..." Therefore Mrs. Mitchell released any claim to the escrow funds, which were the subject of this case, and thus the dispute was only between remaining parties. While plaintiffs' did not oppose said petition, defendant Duttry did not affirmatively consent to the relief requested, however he failed set forth any persuasive argument as to why the relief requested should not be granted. Defendant Duttry merely made broad assertions that Mrs. Mitchell was a necessary and indispensable party, but provides no support for such an allegation. The court finds that it was still able to accord complete relief to the remaining parties in this action without Mrs. Mitchell's presence as a party, and granting the discontinuance did not impair or impede Mrs. Mitchell's ability to protect her interest, nor did it leave defendant Duttry at risk of incurring double, multiple, or inconsistent obligations. Defendant Duttry made no counterclaims (cross-claims) against Mrs. Mitchell, and the court finds that it was correct in discontinuing the action as to Mrs. Mitchell.