J-A20042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DENISE TARABORI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| LAURENCE FISHER, HIS UNKNOWN HEIRS, SUCCESSORS AND ASSIGNS; LESLIE KELLEY, AND OTHERS CLAIMING AN INTEREST IN THE REAL ESTATE WHICH IS THE SUBJECT OF THIS ACTION TO QUIET TITLE, | : | |
| | : | |
| Appellants | : | No. 1721 WDA 2015 |

Appeal from the Judgment entered October 13, 2015
in the Court of Common Pleas of Potter County,
Civil Division, No(s): 512 of 2011

BEFORE:  BOWES, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:         **FILED OCTOBER 27, 2016**

Laurence Fisher, his unknown heirs, successors, and assigns (collectively, "Fisher"), Leslie Kelley ("Kelley"), and others claiming an interest in the real estate that is the subject of this action in quiet title (collectively, "Defendants"), appeal from the judgment quieting title to the disputed property in favor of Denise Tarabori ("Tarabori").  We reverse the judgment quieting title in favor of Tarabori, and remand for entry of judgment in favor of Defendants.

In its Opinion, the trial court set forth the following Findings of Fact, which we adopt for the purpose of this appeal:

(1) [Tarabori] is the owner of real estate located at 36 School Street, Galeton, Pennsylvania.

(2) She acquired this property from her sibling co-tenants[-]in [-]common, Jan Tarabori and Linda Lane, by deed dated August 13, 2007[,] recorded in Potter County Deed Book 0100, Page 0651.

(3) The legal description of her property was described as: "COMMENCING at a point on the Plot of survey of lands of Cretia Ansley at Lot No. 7, being the southwest corner of a lot deeded to J.P. Kelley and being the southeast corner of a parcel of land herein described; thence West along School Street, six rods and six feet to stake and stone on the line of lands formerly of Billings, being the southwest corner of the parcel of land herein described, thence North, departing School Street and along the line of said Billings lands, eight rods to a stake and stones being the northwest corner of the parcel of land herein described; thence East along the lands formerly of Cretia Ansley, four rods and six feet to a stake and stones, being the northwest corner of said lot n/f J.P. Kelley and being the northeast corner of the parcel of land herein described; thence South, along the west lien of said Kelley lot eight rods to the place of beginning. Containing 43 square rods, more or less, and being the west part of said Lot No. 7 of the Cretia Ansley lands.

(4) [Tarabori] and her siblings acquired property from their Mother[,] Eleanor Tarabori[,] by deed dated August 29, 2005[,] recorded in Potter County Deed Book 0055, Page 0767.[1]

(5) [Tarabori's] property and its description traces back to her parents, Harry F. Tarabori and Eleanor Tarabori, who acquired the property by deed dated May 27, 1950[,] from Catherine Artley, recorded June 5, 1990[,] in Potter County Deed Book 144, Page 232.

(6) At the time [that Tarabori's] property was acquired by her parents, the property adjacent to it on the opposite side (*i.e.*[,]

---

[1] In ruling on Defendants' Post-Trial Motions, the trial court expressly recognized that "the area being claimed by adverse possession was not contained" in the 2005 and 2007 deeds.

the south side) of School Street was owned by the Atlantic Richfield Company.

(7) At some point after acquiring [Tarabori's] property (probably in the 1950's), her father[,] Harry Tarabori[,] entered upon the Atlantic Richfield [Company's] property and appropriated an area on the south side of School Street across from [Tarabori's] property for the parking of motor vehicles. This area can be described as approximating forty-five feet on the north side of School Street and extending depth[-]wise to about forty feet.

(8) Sometime in the 1960's (ca. 1961) Harry Tarabori improved the area in dispute by bringing in dirt, cinders, and stones and placing these things in the parking area. During that same period[,] he performed some excavation to raise the slope of the parking area.

(9) In addition to the work done by [Tarabori's] father, her mother[,] during the 1960's[,] planted evergreens around the boundary of the parking area and also planted flowers and other plants in the area. The evergreen trees that were planted by her are still in existence today.

(10) [Tarabori's] parents[,] as well as the rest of the family[,] exercised exclusive possession and use of the parking area and occasionally placed signs in the area advising others not to park there and requesting others who might park there to move their vehicles.

(11) [Members of Tarabori's family] maintained the parking area and cleared it of snow and ice when needed. These actions occurred throughout the time the parking area existed.

(12) [Tarabori's] original survey of the area being claimed was done by Robert Cunningham ["Cunningham"] in December of 2014 and used the center of the evergreen tree line for the survey points. It fronted almost 70 feet on School Street and contained .58 of an acre. ([Tarabori] Exh. 4A)

(13) Subsequently[,] because of the eastern portion of the survey on Exhibit 4A being located on the lands of [J.P.] Kell[e]y, [] Cunningham revisited the area and changed his original survey to reflect [J.P.] Kelley's ownership[,] which resulted in reducing the frontage on School Street to 43.84

feet[,] and the total area being claimed to .38 of an acre (1,635 sq. ft[.]).  ([Tarabori] Exhibit 12)

(14) [Tarabori's] father[,] Harry Tarabori[,] died on November 16, 1971.  Her mother[,] Eleanor Tarabori[,] died on June 22, 2010.

(15) [Tarabori,] who was born in 1952[,] ceased being a full[-]time resident of the home located on the property probably around 1974[,] when she married.  Since that time[,] she has returned to stay at the property on a regular[,] but infrequent basis.

(16)  This use of the parking area has continued up to the present time ….

(17)  On March 8, 2004[,] [] Fisher acquired the Atlantic Richfield property[,] including the parking area which is the subject matter of these proceedings.

(18) [] Fisher[,] prior to 2011[,] had leased his property to [J.P. Kelley,] which included a right of first refusal to purchase the same.

(19) Kell[e]y thereafter questioned [Tarabori's] right to use the parking area[,] and attempted to block her use of the same, thus resulting in the commencement of these proceedings.

Trial Court Opinion, 3/23/15, at 1-2 (footnote added).  Fisher subsequently

leased the property to Kelley.

On December 2, 2011, Tarabori filed her Complaint to Quiet Title and a

Motion for injunctive relief against Fisher and Kelley.[2]  After a trial, the trial

court found in favor of Tarabori, and entered an Order quieting title with

---

[2] Although not relevant to this appeal, Defendants filed Preliminary Objections to Tarabori's Complaint.  Tarabori filed an Amended Complaint, to which Defendants again filed Preliminary Objections.  The trial court dismissed Defendants' Preliminary Objections, after which Defendants filed an Answer and New Matter, and Tarabori filed a Reply to New Matter.

regard to disputed parking lot area. Trial Court Decision, 3/23/15. Defendants filed Post-Trial Motions, which the trial court denied. The trial court subsequently entered Judgment in favor of Tarabori, after which Defendants filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Defendants present the following claim for our review:

Did the [t]rial [c]ourt err in entering Judgment in [Tarabori's] favor based upon adverse possession[,] when the property in question was not included in the legal description of property conveyed to [Tarabori] and [Tarabori] had been the owner for less than twenty-one years?

Brief for Appellants at 4.

Defendants claim that the trial court improperly entered judgment in favor of Tarabori based upon adverse possession. *Id.* at 14. First, Defendants assert that Tarabori cannot "tack" the prior owner's possession of the use of the disputed property, because there is no "privity of estate." *Id.* According to Defendants, "a deed itself does not create privity of estate between the grantor and the grantee for land that is outside of that land which is described in the deed." *Id.* at 15. Defendants argue that because Tarabori failed to establish privity of estate, she failed to establish that she possessed the disputed property for the requisite 21 years. *Id.*

One who claims title by adverse possession

must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years.... However, under certain circumstances, the periods of possession of prior owners may be added on to the period of

possession of the present owners [by] a process, called "tacking" ... but only where there is privity between [successive occupants]. For [the Court's] purposes, "privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law.

*Northern Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 35 (Pa. Super. 2015) (quoting *Baylor v. Soska*, 658 A.2d 743, 744-45 (Pa. 1995)).

In *Baylor*, Robert and Lillian Baylor ("the Baylors") claimed that they held the disputed land, via adverse possession, by tacking the period that their predecessor in title held the disputed land. *Baylor*, 658 A.2d at 743. The Supreme Court held that the Baylors could not tack the period of time in which their predecessor in title held the disputed land, because the predecessor failed to identify the disputed land in her deed to the Baylors:

The only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance[,] by means minimally acceptable for conveyancing of realty[,] that which is intended to be conveyed. In this case, the predecessor in title did not meet this requirement so far as regards the disputed tract.

*Id.* at 746. The Supreme Court explained that

[t]here is good reason for this requirement. Interested parties have a right to discern from the record the state of the title of any parcel of land. If tacking were to be permitted because of vague, undefined "circumstances," there could and most likely would be no way for one not a party to the conveyance to know this. But the law mandates that a person asserting a claim of adverse possession make this assertion openly and notoriously to all the world. There must be no secret that the adverse possessor is asserting a claim to the land in question. *Tioga Coal Co. v. Supermarkets Gen. Corp.,* 519 Pa. 66, 75, 546 A.2d 1, 3 (1988) (Opinion Announcing the Judgment of the Court). If the adverse possessor's claim is to be passed on to a successor in title, therefore, there must be some objective

indicia of record by which it can be discerned with some degree of certainty that a claim of title by adverse possession is being made and that the duration of this claim has been passed on to a successor in title.

***Baylor***, 658 A.2d at 745-46.

In finding that Tarabori had established title by adverse possession, the trial court stated the following:

> [Tarabori] asserts that the adverse possession of the parking area was a family endeavor including her, her siblings, and her parents. It appears that her position embraces the notion that all of them used the parking area during the creation of the claim of adverse ownership of the area. The facts supporting this theory are supported by the evidence of what she claims as fifty years of adverse possession….

Trial Court Opinion, 3/23/15, at 3.[3] Thus, the trial court appears to rely upon evidence of the family's use of the parking area as a circumstance that would allow tacking Tarabori's claim to that of her parents. Based upon the Supreme Court's express holding in ***Baylor***, we conclude that this was error.

---

[3] In its Opinion, the trial court distinguishes the holding of this Court in ***Wolfe v. Porter***, 592 A.2d 716 (Pa. Super. 1991). Trial Court Opinion, 3/23/15, at 3. In ***Wolfe***, this Court held that "a grantee cannot tack his grantor's possession of land when the grantor does not convey such land to him. The only recognized exception occurs where an intent to convey more land than that described may be inferred from the circumstances or the deed itself." ***Wolfe***, 592 A.2d at 718 (citation omitted). This Court stated, "[t]here is no suggestion, however, that title by adverse possession was perfected by adjudication or, indeed, that a claim of title by adverse possession was ever made against the owners of the adjoining tract." ***Id.*** at 719. This Court did not infer that the "circumstances" claimed therein could establish tacking. ***See id.*** In fact, this Court expressly recognized that "[w]here title by adverse possession is inchoate, a deed by a grantor which fails to convey such inchoate right is ineffective to create privity which allows tacking." ***Id.***

Our review of the record discloses no deed in Tarabori's chain of title that "describe[d] in the instrument of conveyance[,] by means minimally acceptable for conveyancing of realty[,] that which [was] intended to be conveyed[,]" *i.e.*, the disputed property. ***See Baylor***, 658 A.2d at 746; ***accord Zeglin v. Gahagen***, 812 A.2d 558, 565 (Pa. 2002) (recognizing that in ***Baylor***, the Supreme Court "dismissed the portion of the privity rules permitting the tacking based on acts or circumstances extrinsic to written deeds."). Without tacking, Tarabori cannot establish the 21-year period of possession necessary to establish title through adverse possession. ***See Northern Forests II, Inc.***, 130 A.3d at 35. Accordingly, Tarabori's quiet title action must fail.

On this basis, we reverse the judgment entered by the trial court, and remand for entry of judgment in favor of Defendants.

Judgment is reversed. Case remanded for entry of judgment in favor of Defendants. Superior Court jurisdiction is relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/27/2016

- 8 -