J-A18042-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| SHIRLEY H. RISINGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARY LOIS LITZINGER, MICHAEL L. | : | No. 248 WDA 2019 |
| APJOK, AND MEGAN F. APJOK | : | |

Appeal from the Order Entered January 14, 2019
In the Court of Common Pleas of Indiana County Civil Division at No(s):
No. 10183 CD 2015

| SHIRLEY H. RISINGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARY LOIS LITZINGER, MICHAEL L. | : | |
| APJOK, AND MEGAN F. APJOK | : | |
| | : | No. 264 WDA 2019 |
| Appellants | : | |

Appeal from the Judgment Entered January 14, 2019
In the Court of Common Pleas of Indiana County Civil Division at No(s):
No. 10183 CD 2015

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 31, 2019

These consolidated cross-appeals follow the judgment entered upon the trial court's verdict as to the locations of boundary lines separating the properties of Shirley H. Risinger ("Risinger"), Mary Lois Litzinger ("Litizinger"), and Michael L. and Megan F. Apjok ("the Apjoks"). We affirm.

The Indiana County, Pennsylvania land in question in this appeal had been farmland at the start of the 20th century, belonging to Hill on the one side and Cramer on the other, before it eventually came to be owned by the parties in this case. In the 1950s, the boundary between the Hill and Cramer properties had been recognized as the line marked by a barbed wire fence. N.T. Trial, 9/7/16, at 24, 42, 125.

Risinger owns two parcels west of the defendants' property: the "Hill Parcel" to the north, and the "House Parcel" to the south. Until 1982, the Apjok Property was part of the Litzinger Property, such that the entire eastern border of Risinger's abutted Litzinger land. Id. at 12, 14-15. Litzinger erected a wooden fence on or about the same line as the old barbed wire fence line in the 1970s. Id. at 81-83, 95-96, 125. When the wood fence fell into disrepair and was torn down, the present row of hemlocks was planted in its stead, a few feet away from the fence line to allow for the trees to grow without encroaching on Risinger's side of the line. Id. at 83-84.

In 2015, the Apjoks obtained a survey of their parcel ("Hudak survey"), intending to place a fence along the property line where Litzinger's wood fence once stood. That survey placed the property line west of the location of the wood fence/row of hemlocks, such that Risinger's driveway encroached upon Apjok's land. Risinger obtained her own survey ("Botsford survey"), which indicated that the boundary corresponded with the hemlock row.

Purely for ease of visualization, we offer the following diagram showing the House Parcel, which is a modified version of exhibit attached to the trial court's March 16, 2018 order clarifying its verdict.



We also offer the below diagram, modified from Risinger's trial Exhibit 1, depicting the Hill Parcel.



In February 2015, Risinger filed a complaint against Litzinger and the Apjoks (collectively "Defendants"), stating claims of, inter alia, quiet title and trespass, seeking to establish the boundaries as depicted in the Botsford survey that Risinger had obtained. Following a non-jury trial, the trial court held that (a) Defendants' Hudak survey properly established the boundary

between Risinger's Hill Parcel and Litzinger's land; and (b) the eastern boundary of Risinger's House Parcel is a straight line five feet west of the center of the hemlock row. These timely cross-appeals followed the entry of judgment on the verdict after the denial of post-trial motions. The parties and the trial court complied with Pa.R.A.P. 1925.

In her appeal, Risinger challenges the propriety of the trial court's adoption of the Hudak survey as the boundary for the Hill Parcel, contending that such was both unsupported by competent evidence and the result of an error of law. See Risinger's brief at 5. Specifically, Risinger claims that the trial court gave improper weight to Hudak's survey, and should have instead found the Botsford survey to be more accurate. Id. at 13-14.

Litzinger and the Apjocks, in their cross-appeal, argue that the trial court erred in (1) not holding that the Hudak survey also properly denoted the boundary between their land and Risinger's House Parcel; (2) holding that a consentable boundary had been created; (3) determining where the consentable line was located; and (4) failing to apply laches to bar Risinger's claims. Cross-Appellants' brief at 7.

We begin with our standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence

- 5 -

in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

Wyatt Inc. v. Citizens Bank of Pennsylvania, 976 A.2d 557, 564 (Pa.Super. 2009) (quoting Wilson v. Transp. Ins. Co., 889 A.2d 563, 568 (Pa.Super. 2005)).

We first address the claims of Defendants regarding the establishment of a consentable boundary between their property and the House Parcel, mindful of the following legal principles:

The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania to quiet title and discourage vexatious litigation. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other.

Moore v. Moore, 921 A.2d 1, 4-5 (Pa.Super. 2007) (cleaned up). The doctrine "is a form of estoppel, whereby once a consentable line has been clearly established, the line becomes binding under application of the doctrine of estoppel after twenty-one years." Long Run Timber Co. v. Dep't of Conservation & Nat. Res., 145 A.3d 1217, 1233 (Pa.Cmwlth. 2016) (cleaned up). "[W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds."

- 6 -

Soderberg v. Weisel, 687 A.2d 839, 843 (Pa.Super. 1997) (citation omitted).

Two elements must be proven to establish a boundary by consentable line: "1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years." Moore, supra at 5. In other words, in order for a legal boundary to be established by acquiescence, "[i]t must . . . appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners." Plauchak v. Boling, 653 A.2d 671, 676 (Pa.Super. 1995) (quoting Inn Le'Daerda, Inc. v. Davis, 360 A.2d 209, 215-16 (Pa.Super. 1976)). Since "the finding of a consentable line depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor." Moore, supra at 5 (cleaned up).

"'Acquiescence' in the context of a dispute over real property, 'denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user.'" Id. at 5 (quoting Zeglin v. Gahagen, 812 A.2d 558, 562 n.5 (Pa. 2002)). "A consentable line by recognition and acquiescence is typically established by a fence, hedgerow, tree line, or some other physical

boundary by which each party abides."[1]  Long Run Timber Co., supra at 1234.  "However, the fence line need not be as substantial as that required for adverse possession."  Id.

The trial court determined that the line where the wooden fence had been prior to the planting of the hemlock trees had been recognized and acquiesced to as the boundary between the House Parcel and the Litzinger/Apjock property for more than twenty-one years.  It explained its reasoning as follows:

> [W]hen [the Apjocks' predecessor] Kington purchased her property in 1980 from the Litzingers she planted a row of trees separating it from the Risinger property.  These trees are still in existence and testimony given by the adult children of both Kington and the Litzingers indicates that the trees were purposely planted away from the property line in order to accommodate growth.  Although Kington is now deceased, her son Clark Kington, who lived in the home for most of his life, testified that he remembered the fence being replaced with the hemlocks and that their future growth was considered when they were planted.  He testified that his mother had the hemlocks planted closer to her side of the property than the fence originally was so that once they grew they would not be encroaching over the property line.  Testimony was also given by Lori Baker, the Litzingers' other daughter, that the hemlock row was planted closer to the Apjoks' residence than the fence was.
>
> Michael Apjok testified that he maintained the hemlocks and trimmed them on both sides, without objection from Risinger.  Although the Apjoks maintained both sides of the trees, they sought permission to enter Risinger's property in order to perform

_____

[1] See, e.g., Zeglin v. Gahagen, 812 A.2d 558 (Pa. 2002) (fence and row of bushes); Plauchak v. Boling, 653 A.2d 671 (Pa.Super. 1995) (hedge); Niles v. Fall Creek Hunting Club, Inc., 545 A.2d 926 (Pa.Super. 1988) (strand of wire along survey line); Inn Le'Daerda, Inc. v. Davis, 360 A.2d 209 (Pa.Super. 1976) (tree line and fence).

the maintenance on the side facing her residence. These actions would indicate that the Apjoks understood the trees to be theirs but also that they were very close to the property line, hence why they asked for permission. Likewise, Risinger's failure to maintain the trees or otherwise improve the area within close proximity of them indicates a knowledge that the trees were on the Apjoks' property, but close to hers. Finally, it was undisputed that the treerow was planted in 1980 when Kington took ownership of the property, thus satisfying the twenty-one year time requirement.

For these reasons, the court finds that by way of the parties' actions the treerow serves as a consentable boundary by recognition and acquiescence. In making this determination, the court also considered testimony from those who had knowledge of the placement of the trees in relation to the fence that was replaced. All who testified regarding the trees indicated that they were intentionally not placed directly on the former fence line in order to allow for growth. As a result, an allowance must be made to provide for the setback for the growth of the trees. Accordingly, the boundary line between the Risinger and Apjok properties shall extend five feet from the center of the treerow in the direction of the Risinger property. The parties have indicated that the trees do not extend along the entire length of the parcels; therefore, to accommodate the area where no trees exist, the parties shall set a straight line running from the center of the treerow to Risinger Road.

Trial Court Opinion, 3/9/17, at 5-6 (unnecessary capitalization omitted).

The trial court's factual findings are supported by the record and clearly satisfy the requirements for establishment of a consentable line boundary. Since at least the late 1970s, the parties and/or their predecessors in interest recognized and acquiesced to the line adopted by the trial court as the boundary between their properties. The argument of Litzinger and the Apjocks that Risinger did not sufficiently utilize the House Parcel up to the fence/tree row to establish a "hostile occupation" of their land, Defendants' brief at 40, is more aptly addressed to an adverse possession claim, not the

separate and distinct doctrine of consentable lines. As the trial court noted, Defendants and their predecessors treated the land on the other side of the fence as belonging to Risinger, planted the hemlocks far enough away from the fence line so that they would not encroach upon Risinger's side of the line, and asked Risinger's permission to go onto her side of that fence line to trim the trees. Accordingly, the trial court committed no error in concluding that the boundary by consent is located five feet west of the center of the hemlock tree line, which is where Litzinger's fence was in the 1970s.[2]

Defendants alternatively argue that, even if a boundary line by consent was established, the trial court erred in determining its location because (1) the hemlock trees were planted away from, rather than on, the fence line, and (2) the hemlock row did not establish a consentable line with Litzinger because it does not extend south past the Apjoks' property. Id. at 41-44. Neither of these arguments has merit.

First, as discussed above, the trial court did not conclude that the consentable boundary is located on the line along which the hemlocks were planted. Rather, the trial court demonstrated that it considered and

_____

[2] Since the trial court did not err in holding that the doctrine of consentable lines established the boundary between the House Parcel and the defendants' land, the line described in the deed is irrelevant, as is the Hudak survey of the location of that line. See, e.g., Soderberg, supra at 843 ("[W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies."). Consequently, Defendants' argument concerning the trial court's failure to accept the Hudak survey merits no relief.

appreciated the meaning of the placement of the hemlock trees by holding that the boundary by consent was established five feet closer to Risinger's house than the line formed by the center of the trees. That was the location of Litzinger's wood fence, which was recognized and acquiesced to by the parties for more than twenty-one years, and which now constitutes the boundary line between the Apjocks' land and Risinger's House Parcel.

Second, as we noted above, Litzinger erected his wood fence in the 1970s on or about the same line as the old 1950s barbed wire fence line that predated the properties' ownership by either Litzinger or Risinger. N.T. Trial, 9/7/16, at 81-83, 95-96, 125. The evidence thus supports the trial court's determination the Litzingers had recognized the old barbed wire fence line as the boundary between their land and Risinger's before the parcel that is now owned by the Apjocks was subdivided out of Litzinger's parcel. See Trial Court Opinion, 8/29/18, at 4-5. Therefore, the trial court did not err in concluding that the southeast boundary between the House Parcel and the Litzinger Property south of the Apjocks' land is a line extending from the row of the hemlocks, as that line is substantially the same as the one which had been indicated by the barbed wire fence that had separated the Litzinger Property from the land now owned by Risinger.

With their final issue, Defendants contend that Risinger's claims were barred by the doctrine of laches. We offer the following summary of the applicable law.

Laches is an equitable remedy that bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. It is well-settled that the doctrine of laches applies by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible.

In order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and b) prejudice to the respondents resulting from the delay. The sort of prejudice required to raise the defense of laches is some changed condition of the parties which occurs during the period of, and in reliance on, the delay. The question of laches is factual and is determined by examining the circumstances of each case. Thus,

> The correct inquiry in determining whether one's conduct resulted in a want of due diligence is to focus not upon what the plaintiff knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him. What the law requires of petitioner is to discover those facts which were discoverable through the exercise of reasonable diligence.

A.M.M. v. Pennsylvania State Police, 194 A.3d 1114, 1118 (Pa.Super. 2018) (cleaned up).

Defendants contend that the trial court should have held that Risinger's claims were barred by laches because not only should she have earlier "discovered the alleged boundary issue through the exercise of due diligence, but Risinger actually filed suit regarding this exact boundary line in 1978 before withdrawing the action of her own accord." Defendants' brief at 46. They maintain that they were prejudiced by the delay because important witnesses are now deceased or incapacitated. Id. Again, we disagree.

As the trial court noted, Risinger's 1978 action was initiated when she and her husband filed a praecipe for a writ of summons against the Litzingers. However, "a complaint was never filed and the suit did not move forward." Trial Court Opinion, 3/9/17, at 8. Defendants point to no evidence that the action related to the boundary at issue in the instant case. At trial, Risinger testified that the action was filed based upon Lloyd Litzinger's plan to install a septic tank and drainage mound near or on Risinger's land contrary to township regulations. N.T. Trial, 9/7/16, at 86-87. Risinger indicated that Lloyd Litzinger ultimately abandoned that plan, and they all went "back to using what [they] considered a boundary line." Id. at 88. These circumstances do not establish that Risinger delayed in seeking to vindicate her property rights, rather, they appear to indicate that she acted when someone encroached upon what she believed was her property. If anything, the record suggests that it is Defendants who sat on their rights, given that they believe Risinger has been encroaching for decades upon their property as described in their deeds, yet they have never initiated an action against her. No relief is due.

We now turn to Risinger's claims regarding the Hill Parcel. Risinger claims that, in adopting the Hudak survey as the boundary for the Hill parcel, the trial court gave improper weight to that survey, and should have instead found the Botsford survey to be more accurate. See Risinger's brief at 5, 13-14.

After a thorough review of the certified record, the parties' briefs and the pertinent law, we discern no abuse of discretion on the part of the trial court as to Risinger's issues, and we affirm as to those claims based upon the cogent and well-reasoned opinions that the Honorable William J. Martin entered on March 9, 2017, and August 29, 2018. Specifically, Judge Martin explained that, while the two surveys were consistent as to two of the three points at issue, Hudak's finding as to the third was supported by physical monuments on the ground that were consistent with deed descriptions. See Trial Court Opinion, 3/9/17, at 7-8; Trial Court Opinion, 8/29/18, at 3-4. The trial court thus properly applied the law that, "As a general rule, where there is conflict between courses and distances or quality of land and natural or artificial monuments, the monuments prevail. . . . Thus, the courses and distances must yield to monuments on the ground." Haan v. Wells, 103 A.3d 60, 71 (Pa.Super. 2014) (cleaned up).

Risinger's remaining arguments attack the credibility determinations of the trial court, which this Count will not disturb on appeal. See Brown v. Halpern, 202 A.3d 687, 706 (Pa.Super. 2019) ("[A] witness'[s] alleged bias goes to his or her credibility, which the fact-finder must assess when deciding what weight to accord to the witness'[s] testimony."); Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc., 77 A.3d 1, 6 (Pa.Super. 2013) ("[W]e are bound by the trial court's credibility determinations.") (internal quotation marks omitted)).

As the trial court's determinations are the product of neither an error of law or other abuse of discretion, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/2019

SHIRLEY H. RISINGER,               : IN THE COURT OF COMMON PLEAS
                                   : INDIANA COUNTY, PENNSYLVANIA
          Plaintiff,    :
                                   :
      vs                 : NO. 10183 CD 2015
                                   :
MARY LOIS LITZINGER, MICHAEL       :
L. APJOK, and MEGAN F. APJOK       :
                                   :
          Defendants.   :

## OPINION AND ORDER OF COURT

**MARTIN, P.J.**

This matter came before the Court at a non-jury trial on September 7, 2016. At dispute among the parties are the locations of boundary lines running between their respective properties. Plaintiff, Shirley Risinger (hereinafter "Risinger") owns two relevant parcels of property, one of which adjoins property to the north owned by Defendant Mary Lois Litzinger (hereinafter "Litzinger") and is referred to by the parties as the "Hill parcel". The other parcel owned by Risinger adjoins property now owned by Litzinger's grandson, Michael Apjok and his wife, Megan Apjok (hereinafter "Apjoks"). The Risingers originally purchased their property in 1951. Litzinger, along with her late husband Lloyd, purchased a tract of land in 1967 and built a home during the 1970s. In 1980, the Litzingers sold the parcel including their home to another party, Bonnie Kington (hereinafter "Kington"), who is also now deceased. In 2012, Kington conveyed the property to the Apjoks.

The instant dispute arose when the Apjoks made plans to build a fence on the side of their property that adjoins Risinger's parcel. In January 2015, when preparing to construct the fence, the Apjoks obtained a survey through Applegate Services, Inc., showing that their western property boundary traveled through an area that includes part of a driveway used by

1

Risinger. After receiving this information, Michael Apjok approached Risinger, showed her the results, and the parties agreed that Risinger could obtain her own survey. In early February 2015, rebar posts were placed along the line set by the Apjoks' survey, directly to the right of the driveway path used by Risinger. If the location of these posts correctly identifies the boundary line, it effectively places the path of the driveway on the Apjok property. According to the Apjoks, the posts were placed so that proper measurements for their proposed fence could be determined by the township. Also running between the Apjok and Risinger properties is a row of hemlock trees that has been in existence for at least twenty-five years. After the Apjoks obtained their survey, Risinger also had her own survey completed by Botsford Surveying, which placed her boundary in close proximity to the side of the hemlock row facing her property. If Risinger's survey correctly identifies the boundary, the entire area of the driveway path would fall on her property. Due to the disagreements in the surveys and the inability of the parties to reach a resolution, Risinger filed the instant action.

Risinger now claims that her survey correctly reflects the boundary lines and requests that the Court quiet title the disputed portion of the property to her. She also makes claims for quiet title under the doctrine of consentable boundary based on the location of the natural border formed by the hemlock trees, or alternatively under the doctrine of adverse possession due to her use of the disputed area. Risinger additionally filed counts seeking damages for trespass and injunctive relief. The Court previously granted the request for injunctive relief on February 5, 2015, enjoining the Defendants from entering the disputed property, causing any changes, or blocking Risinger's access. The Apjoks maintain that their survey shows the correct location of the boundary lines and reject Risinger's contention that the row of hemlock trees was ever intended to serve as a natural border. They also deny that Risinger has met the

2

requirements to sustain a claim of adverse possession or that they have caused any damage to her property. The Apjoks further argue that Risinger's claims are barred by laches because there was a prior dispute involving the boundary line with the Apjok property as early as 1978, thus giving Risinger notice that a question as to its location may exist. The Defendants, by way of Counterclaim, seek a declaratory judgment as to the location of the boundary line.

In addition to the dispute initially giving rise to this matter regarding the boundary between the Apjok and Risinger properties, the two surveys also revealed a discrepancy as to the location of a boundary line in the Hill parcel to the north. For the sake of clarity, the Court will first determine the boundary between the Risinger and Apjok properties and then address the boundary of the Hill parcel.

Testimony at trial indicated that the boundary line between Risinger and Apjok first became a matter of contention in 1978, shortly after the Litzingers constructed the now Apjok residence. At that time, the Risingers filed a claim in equity against the Litzingers citing continuous trespass and a disputed property line. During her testimony, Risinger denied that the dispute was over the boundary, but rather, the placement of the Litzingers' septic system. Testimony of Janet Apjok, the Litzingers' daughter, contradicted this statement, as the house was already built at the time the lawsuit was filed. Nevertheless, during this time frame, the Litzingers erected a fence between their property and the Risingers' property, and the Risingers did not proceed with further legal action. In 1980, Kington purchased the home from the Litzingers and proceeded to replace the fence with a row of hemlock trees which has remained intact to this day.

At trial, surveyors for both parties testified; Timothy Botsford (hereinafter "Botsford") for Risinger, and John Hudak (hereinafter "Hudak"), from Applegate Services, Inc. for the

3

Apjoks. Each testified that when preparing their surveys, they examined the courses and distances in prior deeds, consulted available maps and surveys, and located physical monuments. Testimony from both surveyors indicated that over the passage of many years, various iron pins had been set to denote the locations of certain points along property boundaries. The main disagreement between the two surveyors in determining the boundary between the Risinger and Apjok properties was which monument served as the correct starting point for taking measurements because more than one was located. As a result, the lines placed by the two surveyors were approximately nine feet apart depending on which monument was used. The Court finds the testimony of both Botsford and Hudak to be credible and the reasoning of how they reached their respective determinations to be sound. Given the question of which of the two iron pins is the correct starting point, either surveyor is able to provide a competent explanation of why the one he chose should prevail. Absent knowledge of the circumstances at the time these pins were placed, the Court cannot say with certainty which one indicates the proper starting point, therefore, an inquiry into the past actions of the parties with respect to the boundary must be made.

Aside from the boundary shown in her survey, Risinger also claims that the row of hemlocks forms a consentable boundary and should serve to mark the property line. While a consentable boundary can be established by showing that the parties reached a compromise following a dispute of the location of a property line, it can also be established by recognition and acquiescence. Sorg v. Cunningham, 687 A.2d 846, 849 (Pa.Super. 1997). For example, "a boundary line may be proved by a long-standing fence without proof of a dispute and its settlement by a compromise." Sorg at 849, (Quoting Dimura v. Williams, 286 A.2d 370 (Pa. 1972)). In other words, a property line need not have been disputed and then agreed upon by

4

the parties to be considered a consentable boundary. To establish a consentable boundary by recognition and acquiescence, two elements are required: "1) each party must have claimed and occupied the land on his side of the line as his own; and 2) such occupation must have continued for the statutory period of twenty-one years." Zeglin v. Gahagen, 812 A.2d 558, 561 (Pa. 2002).

As mentioned above, when Kington purchased her property in 1980 from the Litzingers she planted a row of trees separating it from the Risinger property. These trees are still in existence and testimony given by the adult children of both Kington and the Litzingers indicates that the trees were purposely planted away from the property line in order to accommodate growth. Although Kington is now deceased, her son Clark Kington, who lived in the home for most of his life, testified that he remembered the fence being replaced with the hemlocks and that their future growth was considered when they were planted. He testified that his mother had the hemlocks planted closer to her side of the property than the fence originally was so that once they grew they would not be encroaching over the property line. Testimony was also given by Lori Baker, the Litzingers' other daughter, that the hemlock row was planted closer to the Apjoks' residence than the fence was.

Michael Apjok testified that he maintained the hemlocks and trimmed them on both sides, without objection from Risinger. Although the Apjoks maintained both sides of the trees, they sought permission to enter Risinger's property in order to perform the maintenance on the side facing her residence. These actions would indicate that the Apjoks understood the trees to be theirs but also that they were very close to the property line, hence why they asked for permission. Likewise, Risinger's failure to maintain the trees or otherwise improve the area within close proximity of them indicates a knowledge that the trees were on the Apjoks'

property, but close to hers. Finally, it was undisputed that the treerow was planted in 1980 when Kington took ownership of the property, thus satisfying the twenty-one year time requirement.

For these reasons, the Court finds that by way of the parties' actions the treerow serves as a consentable boundary by recognition and acquiescence. In making this determination, the Court also considered testimony from those who had knowledge of the placement of the trees in relation to the fence that was replaced. All who testified regarding the trees indicated that they were intentionally not placed directly on the former fence line in order to allow for growth. As a result, an allowance must be made to provide for the setback for the growth of the trees. Accordingly, the boundary line between the Risinger and Apjok properties shall extend five feet from the center of the treerow in the direction of the Risinger property. The parties have indicated that the trees do not extend along the entire length of the parcels; therefore, to accommodate the area where no trees exist, the parties shall set a straight line running from the center of the treerow to Risinger Road.

Risinger also raised a claim of adverse possession in this matter. As far as any use of the disputed area, testimony indicated that Risinger occasionally used a portion as a driveway, but her primary source of access to her property is another section of driveway not in question in this matter. There is also no evidence that Risinger ever performed any upkeep or made any improvements in the disputed area to support such a claim. Having found that a consentable boundary has been established, further consideration of this claim is unnecessary. Additionally, there is no evidence to support Risinger's claim for damages for trespass, therefore, this claim is without merit.

6

Looking now to the Hill parcel, the Court must resolve boundary line discrepancies arising from the surveys that are unrelated to the primary dispute between the parties. The section of this parcel in question is a triangular area with two upper points at the northeast and northwest corners that taper to meet at one point to the south. In the northeast corner, a pin was located consistent with a former survey used by Hudak and deed calls used by Botsford from an original 1907 deed associated with the land. Also consistent with the findings of both Botsford and Hudak was an iron pipe placed as a marker in the northwest corner. While prior surveys called for a stone marker where the iron pipe was located, neither surveyor found it atypical that the pipe had replaced the stone. Both surveyors were in agreement with the location of these two points to the north.

Where the two surveys begin to deviate is along the line extending from the northeast point to the point at the south. The line marked by Botsford extends slightly more to the east and to the south than the one marked by Hudak. Botsford testified that he created this line by using descriptions from the deed and set iron pins along the line accordingly. In addition to the pin and iron pipe located at the two points in the northern corners, Hudak also identified an iron pin consistent with a prior survey where he believes the southern point of the parcel should be marked.

Once again, both surveyors have provided reasonable explanations for the methods used to mark the boundaries, however, Botsford relied primarily on measurements taken from deed descriptions while Hudak was able to locate physical monuments on the ground that coincided with the points he set out to mark. Generally, "where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail." Doman v. Brogan, 592 A.2d 104, 110 (Pa.Super. 1991), (Quoting Roth v. Halberstadt, 392

7

A.2d 855, 857 (Pa.Super. 1978)). For this reason, the Court finds that with respect to the Hill parcel, the boundary line between the Risinger and Litzinger properties as marked by Hudak must prevail.

The remaining issue for the Court to decide in this matter is the Defendants' argument that this action is barred by laches due to Risinger's failure to exercise due diligence in bringing her claims when she was aware that a possible issue with the boundary existed as early as 1978. In support of this argument, they point to the previous lawsuit filed in 1978 by Risinger and her late husband against the Litzingers. A review of that prior matter shows that while the Risingers filed a praecipe for a writ of summons in equity, that a complaint was never filed and the suit did not move forward. Based on this limited information, the Court cannot determine what factual situations were involved in the prior matter and how they may or may not relate to the matter presently before the Court.

Wherefore the Court makes the following Order.

| | |
|---|---|
| SHIRLEY H. RISINGER, | : IN THE COURT OF COMMON PLEAS |
| | : INDIANA COUNTY, PENNSYLVANIA |
| Plaintiff, | : |
| | : |
| vs | : NO. 10183 CD 2015 |
| | : |
| MARY LOIS LITZINGER, MICHAEL | : |
| L. APJOK, and MEGAN F. APJOK | : |
| | : |
| Defendants. | : |

## ORDER OF COURT

**MARTIN, P.J.**

AND NOW, this _____ day of March 2017, this matter having come before the Court for resolution, it is hereby ORDERED and DIRECTED that the boundary line between the property owned by Plaintiff, Shirley Risinger, and the property owned by Defendants, Michael and Megan Apjok, shall be marked from the center of the line of the row of hemlocks running between the respective properties and shall extend five (5) feet from the center to points on the side of the treerow facing the Risinger property. In the area at the end of the treerow where no trees are present, the boundary shall be marked as a straight line extending directly to Risinger Road. The boundary line running through the Hill parcel between property owned by Plaintiff and property owned by Defendant Lois Litzinger shall be marked in accordance with the survey conducted by John Hudak of Applegate Services, Inc. The parties shall come to an agreement for marking such lines and shall equally bear the cost of doing so. Plaintiff's claim for damages for trespass is DENIED.

BY THE COURT,

_____
President Judge

9

SHIRLEY H. RISINGER,          : IN THE COURT OF COMMON PLEAS
                                          : INDIANA COUNTY, PENNSYLVANIA

          Plaintiff,          :

                                          :

          vs                   : NO. 10183 CD 2015

                                          :

MARY LOIS LITZINGER, MICHAEL  :
L. APJOK, and MEGAN F. APJOK    :

                                          :

          Defendants.      :

## ORDER OF COURT

### MARTIN, P.J.

AND NOW, this _16th_ day of March 2018, this matter having come before the Court for clarification of its prior Order dated March 8, 2017, it is hereby ORDERED and DIRECTED that the boundary line between the property owned by Plaintiff, Shirley Risinger, and the property owned by Defendants, Michael and Megan Apjok, shall be marked from the center of the line of the row of hemlocks running between the respective properties and shall extend five (5) feet from the center to points on the side of the treerow facing the Risinger property. In the area at the end of the treerow where no trees are present, the boundary shall be marked as a straight line extending directly to Risinger Road. This line shall extend the entire length of Plaintiff's property, running between Point A and Point B as labeled by the Court on the Property Line Exhibit attached to this Order. The boundary line running through the Hill parcel between property owned by Plaintiff and property owned by Defendant Lois Litzinger shall be marked in accordance with the survey conducted by John Hudak of Applegate Services, Inc. The parties shall come to an agreement for marking such lines and shall equally bear the cost of doing so.

1

Plaintiff's claim for damages for trespass is DENIED. This Order is WITHOUT

PREJUDICE to either party to file Post-Trial Motions.


BY THE COURT,

_____
President Judge

2

SHIRLEY H. RISINGER,        : IN THE COURT OF COMMON PLEAS
                                     : INDIANA COUNTY, PENNSYLVANIA

             Plaintiff,          :

                                       :

               vs                   : NO. 10183 CD 2015

                                       :

MARY LOIS LITZINGER, MICHAEL   :
L. APJOK, and MEGAN F. APJOK    :

                                       :

            Defendants.        :

## OPINION AND ORDER OF COURT

**MARTIN, P.J.**

This matter arises from a boundary line dispute and is presently before the Court on the Post-Trial Motions of Plaintiff and Defendants. Following a non-jury trial, the Court entered an Opinion and Order on March 8, 2017, determining the location of the boundaries. On March 16, 2018, the Court entered a subsequent Order, clarifying the boundaries. After receiving the clarification, the surveyors for both parties met on the properties and agreed that the boundary lines should be set as depicted in Plaintiff's "Property Line Exhibit", dated October 9, 2017. The parties now dispute additional findings from the Court's original Opinion and Order. For the reasons set forth below, the Post-Trial Motions are DENIED.

The purpose of post-trial motions is to give the trial court an opportunity to review and reconsider its earlier rulings and correct its own errors that may have occurred at the trial court level before an appeal is taken. Lahr v. City of York, 972 A.2d 41, 47 (Pa. Cmwlth. 2009). Post-trial motions should be granted only where there is clear error of some kind, whereby someone has suffered prejudice by that error. Id. (Citing Harman v. Borah, 756 A.2d 1116, 1123 (Pa. 2000)). Acting as factfinder, the Court is free to believe all, part, or none of the evidence presented. Turney Media Fuel, Inc. v. Toll Bros., Inc., 725 A.2d 836, 841 (Pa.Super.

1

1999). Additionally, it is the duty of the Court to assess and resolve issues of credibility and conflicts of evidence. Id. Absent an abuse of discretion or lack of evidentiary support, a trial court's decision should not be disturbed. Firestone v. Luther Ford Sales, Inc. 414 A.2d 355 (Pa.Super. 1979).

The dispute over the location of the boundary lines arose when Defendants Michael and Megan Apjok ("Apjoks") had John Hudak ("Hudak") of Applegate Services conduct a survey in preparation for the construction of a fence between their property and Plaintiff's adjoining property. The two properties are separated by a row of hemlock trees, with a driveway path used by Plaintiff running on the side of the trees facing her property. With the exception of the Apjoks' western boundary that adjoins Plaintiff's land, the Apjoks' property is bordered on all other sides by the property of Defendant Mary Lois Litzinger ("Litzinger"), who is grandmother of Defendant Michael Apjok.

The Apjoks' survey placed the boundary line to the right of the driveway path, which would preclude Plaintiff's use of this area. Plaintiff then had a survey conducted by Timothy Botsford ("Botsford"), placing the boundary line closer to the row of trees and showing that the entire driveway path was on her property. Additionally, the surveys revealed a discrepancy in the boundary of a separate parcel to the north, hereinafter, the "Hill" parcel. After the parties were unable to reach an agreement as to the boundaries, Plaintiff filed a quiet title action.

Following the trial, the Court determined that a consentable boundary had been established by the parties with respect to the row of trees and that the line should extend five (5) feet from the center of the tree row toward Plaintiff's property. The Court also determined that the boundary lines of the Hill parcel should be set in accordance with the survey prepared by Hudak for the Apjoks.

2

Plaintiff now argues that the Court should reconsider the placement of the boundary lines for the Hill parcel to reflect Botsford's survey as well as her claim for adverse possession with respect to the driveway area. Defendants argue that the Court erred in failing to find Hudak's survey correct in its entirety, in finding that a consentable boundary was established, and in finding that the boundary extended past the Apjoks' property, and along Litzinger's property line. Defendants also maintain that the Court erred in finding that Plaintiff's claims were not barred by laches.

With respect to the Hill parcel, Plaintiff argues that Hudak used old survey pins to calculate the line as opposed to actual physical monuments, and accordingly, Botsford's boundary should be recognized as the correct one. As the Court discussed in its Trial Opinion and Order, both surveyors were able to locate the two northernmost corners of the property and did not disagree on those points. From those points, the eastern and western boundaries taper into one southern point, forming a triangular parcel. Although both Hudak and Botsford used the same northern points, Botsford's boundary extends more to the east as it runs to a southern point. Botsford's southern point is also set slightly farther south than the southern point recognized by Hudak.

Here, Hudak did not simply use old survey pins as Plaintiff suggests, but rather was able to locate physical monuments on the ground that were consistent with deed descriptions. In the northwest corner of the Hill parcel, Hudak located an iron pipe where a stone had been previously called for and an iron pin in the northeast corner. Hudak explained that he was also able to locate a roof bolt along what he marked as the eastern boundary line of the Hill parcel and an iron pin that he recognized as the southern point. In contrast, Botsford explained that he located the eastern boundary by using deed descriptions and setting pins accordingly.

3

When a discrepancy exists between courses and distances in a deed and physical monuments on the ground, the monuments will prevail. Doman v. Brogan, 592 A.2d 104, 110 (Pa.Super. 1991). Here, Hudak was able to locate physical monuments coinciding with deed descriptions and these points must prevail to set the boundaries of the Hill parcel.

With respect to reconsideration of her claim for adverse possession, Plaintiff failed to satisfy the requirements for such a claim at trial and has not provided any additional information in support of it. For these reasons, further discussion of this claim is unnecessary.

Defendants now argue that their survey must prevail in its entirety because it was determined to be accurate with respect to the Hill parcel. Further analysis of the surveys is unnecessary, because even if the Court were to find Defendants' survey to be correct on all points, a consentable boundary by recognition and acquiescence exists. While Defendants disagree with the finding that a consentable boundary was established, this issue was discussed at length in the Trial Opinion, and they have offered no additional evidence or information to support an alternative outcome.

Defendants raise another related issue, however, claiming that the boundary cannot extend along Litzinger's property to the south of the Apjoks' property because the row of hemlocks was planted by the Apjoks' predecessor in title, Bonnie Kington ("Kington"). They argue that by extending the boundary south of the Apjoks' property, Litzinger is being bound by the actions of Kington, her former neighbor. To the contrary, Litzinger is bound by her own actions, as Kington's predecessor in title. Trial testimony indicated that the original barrier between the properties was a fence erected by Litzinger and her late husband, Lloyd. Kington merely replaced the fence with the hemlock trees, leaving an allowance for their growth. From the end of the row of hemlocks, an older tree row and fence line also continue between the

4

properties to the southeastern corner of Plaintiff's land, indicating the recognition of a boundary along that line.

Finally, Defendants argue that Plaintiff's claim should be barred by laches based on her failure to move forward with a lawsuit she filed in 1978 due to a property disagreement with the Litzingers. As mentioned in the Trial Opinion, a review of that matter shows only that a writ of summons in equity was filed and Plaintiff never proceeded to file a complaint.

"Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. Thus, in order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. Moreover, the question of laches is factual and is determined by examining the circumstances of each case." Fulton v. Fulton, 106 A.3d 127, 131 (Pa.Super. 2014).

Defendants claim that Plaintiff believed Litzinger's fence and later, Kington's hemlocks, encroached on her property yet failed to act without any explanation for doing so. As a result, Defendants argue that they are prejudiced because Litzinger is unable to participate in this litigation due to Alzheimer's disease and Kington and Lloyd Litzinger are now deceased.

There is no evidence indicating that Plaintiff believed the fence or the hemlocks were encroaching on her property, or even realized an issue existed until Defendants conducted their survey. For this reason, the Court lacks a factual basis for determining that Plaintiff failed to exercise due diligence. Although individuals who were involved in past events are either deceased or unable to testify, other individuals with knowledge of the circumstances did offer

5

testimony. As a result, the Court finds that Defendants have failed to show that they were prejudiced due to any delay by Plaintiff.

Wherefore, the Court makes the following Order.

SHIRLEY H. RISINGER,

             Plaintiff,

       vs

MARY LOIS LITZINGER, MICHAEL
L. APJOK, and MEGAN F. APJOK

             Defendants.

: IN THE COURT OF COMMON PLEAS
: INDIANA COUNTY, PENNSYLVANIA
:
:
: NO. 10183 CD 2015
:
:
:
:
:

## ORDER OF COURT

**MARTIN, P.J.**

AND NOW, this 25th day of August 2018, upon due consideration of both Plaintiff's and Defendants' Motions for Post-Trial Relief, it is hereby ORDERED and DIRECTED that the Motions are DENIED.

BY THE COURT,

_____
President Judge

INDIANA COUNTY
PROTHONOTARY AND
CLERK OF COURTS
2018 AUG 29 AM 9 38

7