J-A01011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KENNETH HOCKMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARON L. HURSH AND THE | : | |
| IRREVOCABLE TRUST  AGREEMENT | : | |
| OF FRED W. WRIGLEY, JR. | : | No. 1293 EDA 2020 |
| | : | |
| Appellants | : | |

Appeal from the Amended Judgment Entered August 4, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2017-04713

| | | |
|---|---|---|
| KENNETH HOCKMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHARON L. HURSH AND THE | : | |
| IRREVOCABLE TRUST AGREEMENT | : | |
| OF FRED W. WRIGLEY, JR. | : | No. 1589 EDA 2020 |
| | : | |
| Appellants | : | |

Appeal from the Amended Judgment Entered August 4, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2017-04713

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: APRIL 5, 2021**

Sharon L. Hursh ("Hursh") and the Irrevocable Trust Agreement of Fred

W. Wrigley, Jr. ("Wrigley Trust") (collectively "Appellants") appeal from the

_____

[*] Retired Senior Judge assigned to the Superior Court.

amended judgment entered on August 4, 2020, in favor of Appellee, Kenneth

Hockman ("Hockman"), after a non-jury trial in Hockman's action to quiet

title.[1]  After careful review, at docket number 1293 EDA 2020, we affirm.  We

quash Appellants' appeal at docket number 1589 EDA 2020 as duplicative.

The trial court provided the following factual history of this case in its

Pa.R.A.P. 1925(a) opinion:

> [Hockman] … owns and resides on the property located at 2015
> N. Ridge Road, Perkasie, PA 18944 (the "Hockman Property").
> [Appellants] are … Hursh … and the … Wrigley [Trust].  The "Hursh
> Property" is located at 2025 N[.] Ridge Road, Perkasie[,] PA
> 18944.  Hursh lives at the Hursh Property[,] and her husband Fred
> Wrigley ("Wrigley") lived on the property with her until his death
> in May 2013.  There is a garage on the Hockman Property that
> encroaches nine (9) feet onto the Hursh Property[,] and there is
> a parcel of grass next to the garage that also encroaches on the
> Hursh Property (collectively, "Disputed Property").  The parcel of
> grass that is part of the Disputed Property is the grassy area that
> is in line with the back wall of the garage, which encroaches nine
> (9) feet on the Hursh Property.  The Disputed Property covers a
> 9[-]foot by 200[-]foot area, totaling 1,800 square feet.  In 1982,

---

[1] Appellants purport to appeal from the June 22, 2020 order denying their motion for post-trial relief; however, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions.  **See generally Johnston the Florist, Inc. v. TEDCO Constr. Corp.**, 657 A.2d 511 (Pa. Super. 1995) (*en banc*).  Although Appellants' notice of appeal at docket number 1293 EDA 2020 was filed prematurely in the instant matter, judgments were subsequently entered to conform to the trial court's January 31, 2020 decision.  A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction.  **Drum v. Shaull Equipment and Supply Co.**, 787 A.2d 1050 (Pa. Super. 2001).  **See also** Pa.R.A.P. 905(a)(5) (stating that a notice of appeal filed after a court's determination but before the entry of an appealable order/judgment shall be treated as if it was filed after the entry of the appealable order/judgment and on the date of entry).  We have adjusted the caption accordingly.

Paul Weber, the prior owner of the Hockman Property, built the garage with permits from East Rockhill Township.

In 1993, Hockman purchased the Hockman Property, including the garage. Hockman was given a Certificate of Occupancy from East Rockhill Township for the property. At the time of closing, Hockman was given the "Plot Plan[,]" which showed that the existing garage was not encroaching on the Hursh Property. The Plot Plan is a drawing of the Hockman Property that shows the structures on the property[,] as well as a depiction of the property line between the Hockman Property and the Hursh Property. Relying on the Plot Plan, Hockman obtained permits from East Rockhill Township and made an addition to the garage in 1993.[2] In 1997, Hockman obtained another permit and made another addition to the garage.[3] In 1998, Hursh and Wrigley had the Hursh Property surveyed where they discovered that Hockman's garage encroached nine (9) feet onto [their p]roperty. When Hockman became aware of the encroachment was disputed at trial. This [c]ourt determined that [he] became aware of the encroachment in April or May of 2014.

Trial Court Opinion ("TCO"), 8/7/20, at 1-3 (citations to record omitted).

Hockman filed this action to quiet title to the Disputed Property. After a non-jury trial, the trial court entered the following additional findings of fact:

[Hockman] testified on his own behalf[. T]his [c]ourt finds his testimony to be credible. [He] testified that when he purchased the home, he relied on the Plot Plan and Certificate of Occupancy,

_____

[2] Hockman built a "single bay [and] attached it to the building" on the "upper side" of the garage, which he used for his "work truck." N.T. Trial, 9/9/19, at 22. *See also id.* at 8 (noting that the bay, or "second garage" as referred to by Appellants, was added on to the "left side" of the original garage).

[3] Hockman "built a small shed on the lower end" or "right side" of the garage, which Appellants refer to as the "third garage." *Id.* at 8, 22. He explained: "I lined up the back of the garage with the addition on the upper side. And I lined up the back of the shed with the back of the garage also. All of them are in line." *Id.* at 45.

which gave him no reason to believe the garage was not part of the Hockman Property.[4]  In April or May of 2014, Hockman was told by Hursh that his garage encroached nine (9) feet onto the Hursh Property.  Hursh told Hockman that the garage would have to be removed.  Upon learning this information, Hockman immediately sought legal advice.

[Hockman] presented Brian Wallace as an expert witness[;] however[,] the [c]ourt held that only his testimony would be considered[] and his [e]xpert [r]eport would not be admitted as evidence.  Wallace testified to the monetary impact the loss of the Disputed Property would have on each property.  [He] testified that the Hockman Property would lose approximately One Hundred Thousand Dollars ($100,000.00) if the garage was removed, and the Hursh Property would lose only *de minimis* value.

[Hursh] testified on her own behalf[.  T]he [c]ourt did not find her testimony credible.  [She] testified that her husband, Wrigley, met with and informed Hockman that the garage was encroaching on the Hursh Property and that Hockman could leave his garage up for the time being.  Hursh was not present at this meeting.  Hockman testified that the 1998 meeting between Hockman and Wrigley never occurred.  This testimony is supported by the fact that Hockman did not seek legal counsel in 1998, whereas he sought legal counsel immediately upon being informed of the encroachment in 2014.  Further, no contemporaneous notes or record of the meeting have been produced to indicate that the meeting occurred.  The [c]ourt finds that no meeting occurred between Hockman and Wrigley where Hockman was given temporary permission to keep his garage standing[,] in light of the encroachment.

Findings of Fact, 2/6/20, at 4-5 (paragraph numbers and some paragraph breaks omitted).  Based on the foregoing evidence, the trial court issued an order dated January 31, 2020, declaring that Hockman shall acquire title to the Disputed Property by adverse possession and barring Appellants from

_____

[4] Hockman testified that he believed the property line was "15 feet past the back of the garage."  ***Id.*** at 40.

asserting any claims to the Disputed Property. Appellants filed a post-trial motion, which was denied on June 22, 2020.

On July 8, 2020, Appellants filed a notice of appeal at 1293 EDA 2020, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. By *per curiam* order dated July 22, 2020, this Court notified Appellants that their appeal was premature, as an appeal lies from the entry of judgment, not from an order denying a post-trial motion,[5] and directed Appellants to praecipe the trial court prothonotary to enter judgment on the January 31, 2020 decision. Counsel for Appellants praeciped the court accordingly. Judgment was entered in favor of Hockman and against Hursh on July 24, 2020, and amended on August 4, 2020, for possession of the Disputed Property and to bar Hursh from asserting any claims to the Disputed Property. Similarly, judgment for adverse possession was entered on July 31, 2020, in favor of Hockman and against the Wrigley Trust.[6] On September 4, 2020, Appellants filed a second notice of appeal at 1589 EDA 2020, "prophylactically," in response to Hockman's motion to quash. We denied the application to quash on September 10, 2020, and by *per curiam*

---

[5] On July 31, 2020, Hockman filed an application to quash the appeal at 1293 EDA 2020 on the same grounds.

[6] We note our displeasure with Appellants' entering multiple judgments, instead of *a* judgment on the January 31, 2020 decision of the trial court, as we directed them to do in our *per curiam* order dated July 22, 2020. Nevertheless, under the specific circumstances in this case and in keeping with the spirit of **Johnston the Florist**, we "regard as done that which ought to have been done." **See Johnston the Florist**, 657 A.2d at 514-15 (citation omitted).

order dated October 14, 2020, we consolidated the two appeals at 1293 EDA 2020 and 1589 EDA 2020. We now quash the appeal at 1589 EDA 2020 as duplicative.

Herein, Appellants present the following issues for our review:

A. Whether the trial court committed an error of law and an abuse of discretion when it found that Hockman had proven with the required credible, definitive, and clear evidence that his possession of the area of land covered by and adjacent to the second and third garages was actual, continuous, exclusive, visible, notorious, distinct, and hostile for 21 years?

B. Whether the trial court committed an error of law and an abuse of discretion when it found Hockman's testimony credible?

C. Whether the trial court committed an error of law and an abuse of discretion when it found that Hockman could tack the time his predecessor-in-title allegedly occupied the Disputed Property onto his claim?

Appellants' Brief at 4 (unnecessary capitalization and suggested answers omitted).

We apply the following standard of review to a non-jury trial verdict:

Our appellate role in cases arising from non[-]jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to facts of the case. The trial court, as the finder

- 6 -

of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

***Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.***, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Preliminarily, we note:

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law; it is dependent upon possession for a set period of time and authorized by statute. ***See*** 68 P.S. §§ 81-88 (claim by adverse possession). One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct[,] and hostile possession of the land for twenty-one years. ***Flannery v. Stump***, 786 A.2d 255, 258 (Pa. Super. 2001) (citations omitted). Each of these elements must exist; otherwise, the possession will not confer title. ***Id.***

***Weible v. Wells***, 156 A.3d 1220, 1224 (Pa. Super. 2017).

This Court previously provided an extensive summary of the substantive law regarding the elements of adverse possession:

"An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his acts…." ***Klos***[ ***v. Molenda***], … 513 A.2d [490,] 492 [(Pa. Super. 1986)] (citations and quotations omitted).

Broadly speaking, "actual possession" of land is dominion over the land; it is not equivalent to occupancy. ***Reed v. Wolyniec***, … 471 A.2d 80 ([Pa. Super.] 1983); ***Burns v. Mitchell***, … 381 A.2d 487 ([Pa. Super.] 1977) (*en banc*) (plaintiff who had occupied defendant's land and maintained lawn up to fence for more than 21 years established title by adverse possession); C.J.S., Adverse Possession §§ 30, 42. There is no fixed rule, however, by which the actual possession of real property by an adverse claimant may be determined in all cases. 3 Am.Jur.2d § 18, at 109. The

determination of what constitutes actual possession of property for purposes of adverse possession depends on the facts of each case, and to a large extent on the character of the premises. ***Id.***

The words "visible and notorious possession," as applied to the adverse holding of land by a party without color of title, mean that the claim of ownership must be evidenced by conduct sufficient to place a reasonable person on notice that his or her land is being held by the claimant as his own. ***Sterner v. Freed***, … 570 A.2d 1079 ([Pa. Super.] 1990) (plaintiff's use of defendant's driveway notorious for 26 year period and therefore sufficient to establish prescriptive easement); 3 Am.Jur.3d § 69, at 165-166.

To constitute distinct and exclusive possession for purposes of establishing title to real property by adverse possession, the claimant's possession need not be absolutely exclusive. ***Reed***, ***supra***. Rather, it need only be a type of possession which would characterize an owner's use. For example, in ***Reed***, the appellees, Robert and Audrey Reed, asserted title by adverse possession to a lot adjacent to their residence. The Reeds had maintained the lot by cutting the lawn and by planting and maintaining thereon various shrubbery and flowering plants. In affirming the trial court's determination that the Reeds had established title to the lot by adverse possession, Judge Wieand, writing for a unanimous court, opined:

> Thus, the exclusive character of [the] appellees' [(the Reeds)] possession was not destroyed because other persons occasionally passed unobserved over the lot. It was enough that [the] appellees' possession was to the general exclusion of others and that they remonstrated with persons who attempted, without permission, to use the land.

***Reed***, … 471 A.2d at 84 (citations omitted); ***see also Pistner Bros., Inc. v. Agheli***, … 518 A.2d 838 ([Pa. Super.] 1986) (subdivision lot owner's action in planting grass on abutting, undedicated street held insufficient to establish interference with use of street for purposes of adverse possession where others able to use street for its intended purpose); ***Lyons v. Andrews***, … 313 A.2d 313 ([Pa. Super.] 1973).

The word "hostile," as an element of adverse possession[,] does not mean "ill will" or "hostility," but implies an assertion of ownership rights adverse to that of the true owner and all others. ***Schlagel v. Lombardi***, … 486 A.2d 491 ([Pa. Super.] 1984) (citing ***Vlachos v. Witherow***, … 118 A.2d 174 ([Pa.] 1955)); ***see***

- 8 -

*also **Jones v. Porter***, 3 P.&W. 132 (1831) (party who attempted to establish adverse possession was not required to show that he had entered the land and held it in direct hostility to other claimants). Simply stated, the possession must be "such as to import, a denial of the owner's title." 3 Am.Jur.2d § 50, at 143-[]44…. Furthermore, if all of the elements of adverse possession are established, the element of hostility is implied. ***Schlagel***, *supra*.

Finally, in order for adverse possession to ripen into title, it is necessary that such possession had been continuous and uninterrupted for the full statutory period. ***Tioga Coal***[ ***Co. v. Supermarkets General Corp.***, 433 A.2d 483 (Pa. Super. 1981)]; ***Elias v. Scott***, … 64 A.2d 508 ([Pa. Super.] 1949). In this Commonwealth, as in most jurisdictions, the statutory period is twenty-one years. ***See*** 42 Pa.C.S. § 5530(a)(1) …; ***Conneaut Lake***[ ***Park Inc. v. Klingersmith***, 66 A.2d 828, 829 (Pa. 1949)]; ***Klos***, *supra*. The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day. ***See Reed***, *supra* (single twenty-four hour attempt by record owner to interrupt claimant's possession did not destroy continuity of adverse possession). A temporary break or interruption, not of unreasonable duration, does not destroy the continuity of the adverse claimant's possession. ***Id.***

***Brennan v. Manchester Crossings, Inc.***, 708 A.2d 815 (Pa. Super. 1998) (quoting ***Glenn v. Shuey***, 595 A.2d 606 (Pa. Super. 1991), *abrogated on other grounds **Zeglin v. Gahagen***, 812 A.2d 558 (Pa. 2002)).

Here, Appellants attack the trial court's finding of adverse possession, stating that Hockman failed to meet his burden of proving *any* of the requisite elements, *e.g.*, "actual, continuous, exclusive, visible, notorious, distinct[,] and hostile possession of the land for twenty-one years." They claim that the evidence produced by Hockman at trial was "too nebulous and vague" and that it failed to meet the heavy burden of "credible, clear, and definitive evidence." ***See*** Appellants' Brief at 16-17, 29. For instance, Appellants aver

that Hockman never gave a definitive description of the Disputed Property, and they assert that the evidence he produced regarding various activities he performed on the Disputed Property, *e.g.*, lawn mowing, burying his dog, planting and maintaining trees, and placing a dumpster pad, was too vague as to *when* he began performing these activities and as to precisely *where* on the property these activities occurred. ***Id.*** at 17-18. Hence, they dispute the finding that Hockman is entitled to ownership of the *entirety* of the Disputed Property. ***Id.*** at 17. ***See also id.*** at 27 ("At best, this evidence would prove Hockman has adverse possession over the small strip of land where the trees are planted and over … the plot of ground his dog's grave is in. [It] does not provide proof that he has obtained dominion and control over this entire portion of the Disputed Property for the necessary 21 years."). Appellants' claims are meritless.

First, we note that Appellants include little legal analysis in support of their claims. Instead, they primarily endeavor to dispute the trial court's findings of fact, pointing to contradictory and self-serving testimony. ***See id.*** at 17-29. They are essentially asking this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder, which we cannot and will not do. ***See Gamesa Energy USA***, 181 A.3d at 1192. ***See also Gutteridge v. J3 Energy Group, Inc.***, 165 A.3d 908, 914 (Pa. Super. 2017) (stating that this Court will respect a trial court's findings with regard to the credibility and weight of the evidence "unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or

- 10 -

flagrantly contrary to the evidence") (quoting ***J.J. DeLuca Co. v. Toll Naval Associates***, 56 A.3d 402, 410 (Pa. Super. 2012)). "The test is not whether this Court would have reached the same result on the evidence presented[] but[,] rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***Gutteridge***, 165 A.3d at 916. We deem the trial court's finding of adverse possession in the instant matter to be clearly supported by the evidence that the trial court found credible.[7]

The trial court opined:

> To prove adverse possession Hockman "must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty[-]one years." [***Conneaut Lake***, 66 A.2d at 829.] Hockman established that he met these elements. First, since the day [he] purchased the Hockman Property, [Hockman] has been in actual use of the garage.[8] [He] has used the garage continuously since 1993.[9]

---

[7] The trial court found Hockman's testimony to be credible. ***See*** Findings of Fact at 4 ¶16.

[8] Hockman testified: "As soon as I bought the property, I added on a dumpster pad to the lower end of the garage. I had to get my dumpster off my other property…. I … [g]ot a backhoe in to dig holes and plant[ed] pine trees along the edge of the property that I was told … where the property line was [*sic*]." N.T. Trial at 22. ***See also id.*** at 63 ("[The trees] were planted in spring of '93[,] right after I bought the house."); ***id.*** at 82-83 (Hockman's noting that he was working on the property before it went to settlement, with the seller's permission; once he purchased the property, he moved in and built the dumpster pad next to the garage within 30 days).

[9] Hockman indicated that he used the garages for his business, his truck, his car, an antique truck that he is working on, gardening equipment, tools, etc. ***Id.*** at 57.

[His] use has been visible, as it was clear and obvious to Hursh that the garage was being used by Hockman. This includes Hursh's knowledge that Hockman expanded and repaired the garage. Hockman's use of the garage was exclusive, as he was the only person who used the garage[;] Hursh never set foot in the garage[;] and Hockman maintained the grass and performed other landscaping duties for the parcel of land next to the garage.[10] Hockman's use of the land was hostile, because [he] acted as if he were the owner of the land.[11] This is illustrated by the fact that Hockman believed he was the owner of the Disputed Property until spring [of] 2014. Hockman has met the statutory period of twenty[-]one (21) years required for adverse possession. Hockman purchased the home in February of 1993 and was made aware of the encroachment in April or May of 2014, which exceeds the twenty[-]one (21) year statutory requirement.

TCO at 3-4 (footnotes omitted). After careful review, we discern no abuse of discretion or error of law.

To the extent that Appellants aver Hockman failed to establish his continuous use of the non-garage portion of the Disputed Property, the trial court explained:

The Disputed Property encompasses the garage and the area next to the garage, which is covered with grass and marked by trees. Hockman's testimony established his use of this area. Hockman maintained the grass, maintained the trees, and even buried his dog on the Disputed Property. Hockman acted as if he were the owner of this plot of land[] and believed that he was. There was

_____

[10] Hockman owns a tractor, which he keeps in the shed. He stated, "I have to go down that strip [of grass] to back the tractor out of the shed." *Id.* at 57. In addition to mowing the grass, he maintained the pine trees, cleaned up limbs when they fell, and paid to have two of the trees cut up and hauled away after they fell over. *Id.* at 63.

[11] Hockman stated that he used the grassy, lower end of the property "for recreation[,]" and that he "buried [his] dog down there, planted trees, maintained the trees, sprayed for bugs…, and basically maintained the yard." *Id.*

- 12 -

> sufficient evidence to support [the c]ourt's finding that Hockman adversely possessed not only the garage, but the parcel of land directly in line with the garage.

*Id.* at 6-7. *See also Brennan*, 708 A.2d at 821 (concluding the appellants established adverse possession where they maintained the tract of land adjacent to their property, seeded the area, fertilized the grass, mowed the grass, raked leaves, and used the tract for recreational activities); *Klos*, 513 A.2d at 492 ("The use of land for lawn purposes and the continuous maintenance thereof in connection with a residence … are sufficient to establish adverse possession."); *Reed*, 471 A.2d at 85 (determining that maintaining the lawn, planting flowers and shrubs, erecting a bird house, and using the land for recreational purposes for more than twenty-one years was sufficient to establish adverse possession claim).

Additionally, Appellants attempt to distinguish the "second" and "third" garages from the original garage, asserting that they "take up additional land to the north and south of the first garage," and that Hockman should have been required to prove the elements of adverse possession as to all three structures and the land on which they are situated. Appellants' Brief at 21. While they do not dispute that the original garage was in place at the time Hockman purchased the Hockman Property in 1993 and, hence, meets the 21-year statutory period, Appellants argue that he has failed to prove the 21-year period has been met in regards to the second and third garages.

The trial court astutely responded:

> This argument is flawed. The second and third garages are additions to the original garage. Hockman twice got permits from

East Rockhill Township to make additions and build additional structures around his garage. The second and third garages do *not* encroach any further onto Hursh's property. They take up the *same parcel of land* that Hockman had been adversely possessing since he took ownership of the property.[12] Hockman has met the requirements to adversely possess the land[. T]he fact that he made improvements upon that land has no impact on his right to gain title to the land by adverse possession.

TCO at 7 (emphasis added). We agree.

To the extent that Appellants argue that the statutory period "did not automatically start as soon as [Hockman] purchased the Hockman Property" but, rather, "commenced at the time [he] started conducting activities upon the Disputed Property sufficient to form the basis of his claim of adverse possession[,]" Appellants' Brief at 22, the trial court added:

Hockman moved onto the Hockman Property in February 1993. Upon taking possession of the Hockman Property, he *immediately* took exclusive possession of the garage and the rest of the Disputed Property. [Appellants] aver[] that Hockman did not establish when his use of the garage began. This is untrue, as Hockman clearly stated that he moved into the property in February 1993, [and] he *immediately* began using the garage. Therefore, the statutory period for Hockman's adverse possession began in February 1993.

TCO at 5 (emphasis added). Based on the foregoing, Appellants fail to convince us that we should disturb the trial court's ruling.

---

[12] The Disputed Property is identified herein as the approximately 9-foot by 200-foot area of land which consists of the original garage and parcel of grass in line with the back of the garage that encroaches on the Hursh Property. *See* TCO at 2. The record clearly reflects that the second and third garages were built on this same parcel of land. *See* N.T. Trial at 45 (noting that the back of the second and third garages are lined up with the back of the original garage).

In their second issue, Appellants claim that the trial court's finding of Hockman's testimony as credible was "arbitrary and capricious." Appellants' Brief at 14. They argue that "none of Hockman's testimony should be considered credible, "because he gave false testimony on the stand concerning a core element of his claim." *Id.* at 29. Specifically, Appellants contend that his testimony "concerning the placement of the dumpster pad and dumpster prior to the construction of the third garage is contradicted by his own photographic and other documentary evidence." *Id.* at 14. Their entire credibility claim is based on their assertion regarding this alleged false testimony.

We observe that the only complaint regarding the trial court's credibility finding relating to Hockman's testimony included in Appellants' Rule 1925(b) concise statement is "concerning *when [he] first became aware of the disagreement* over the ownership of the Disputed Property and … of the location of the garages on the Hursh Property." *Id.*, Appendix C, at 3 (emphasis added). Their concise statement is void of any reference to the credibility of Hockman's testimony as to the location of the dumpster pad. Consequently, Appellants' credibility argument is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P.

- 15 -

1925, it is the trial court's order that triggers an appellant's obligation….
[T]herefore, we look first to the language of that order.") (internal quotation
marks and citations omitted); Trial Court Order, 7/7/20, at 1 (unnumbered
page) (warning Appellants that "[a]ny issue not properly included in the
concise statement shall be deemed waived").

Finally, Appellants claim that the trial court erred in determining that
tacking was proper in this case. Appellants' Brief at 15. "Tacking is the joining
of consecutive periods of possession by different persons to treat the periods
as one continuous period." *Id.* at 35 (citing Black's Law Dictionary (11th ed.
2019)). Appellants aver that the deed transferring the Hockman Property
from the Webers to Hockman contains no reference to the Disputed Property
and, thus, did not create any privity between these two parties concerning
said property. They conclude that Hockman, therefore, could not tack his
adverse possession claim onto the Webers' alleged claim. *Id.* (citing ***Baylor
v. Soska***, 658 A.2d 743 (Pa. 1995) (holding that the only method by which
an adverse possessor may convey title asserted by adverse possession to
allow tacking is to describe in the instrument of conveyance the realty
intended to be conveyed)). No relief is due on this claim.

Having already concluded that the trial court properly found Hockman
independently acquired the Disputed Property via adverse possession, we
deem the issue regarding tacking to be moot. ***See*** TCO at 4 ("Hockman met
the twenty[-]one (21) year period for adverse possession without tacking on
the previous property owner's possession."). Nevertheless, even if tacking

was needed to establish adverse possession, we would uphold the trial court's finding that it would apply in this case.

As the trial court so aptly explained:

To successfully tack on one's claim of adverse possession to another, the party must prove that "each predecessor must have claimed title to the property in dispute, and in transferring to his successors must have purported to include it." [**Glenn v. Shuey**, 595 A.2d 606, 613 (Pa. Super. 1991) (citation omitted).]

Here, when Weber, the previous owner of the Hockman Property and the person who built the garage, sold the Hockman Property to Hockman, he intended to convey the entire property, including the garage and the rest of the Disputed Property. Weber gave Hockman a Plot Plan, which was a drawing of the land, structures, and boundaries. This Plot Plan included the garage and showed the garage as being on the Hockman Property.[13] This meets the requirements for tacking[.] Weber claimed title to the Disputed Property and intended to convey the Disputed Property to Hockman upon the sale of the property.

*Id.* at 5. We further note that Appellants' reliance on **Baylor** overlooks our Supreme Court's decision in **Zeglin**, *supra*, in which it recognized that a property owner can tack prior periods of ownership despite the lack of a specific stated interest in the deed. **See Zeglin**, 812 A.2d at 566 ("[T]acking is permitted … upon sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest.").

---

[13] Moreover, we note that the deed transferring the Hockman Property from Weber to Hockman includes language specifying that the conveyance includes the land described, "[t]ogether with all and singular the buildings [and] improvements…." Exhibit D-5.

Accordingly, we affirm the judgments entered in favor of Hockman and against Appellants for adverse possession of the Disputed Property.

Appeal at 1589 EDA 2020 quashed.  Judgments reflecting the January 31, 2020 trial court decision and challenged in appeal at 1293 EDA 2020 affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/5/21